DECISION
Before this Court is an administrative appeal from a decision of a Hearing Committee formed under the Law Enforcement Officers' Bill of Rights (LEOBR). Gregory Daniels seeks reversal of the Hearing Committee's decision of May 20, 2002, which sustained a recommendation from the City of Providence Chief of Police for the Appellant's termination. This Court has jurisdiction pursuant to G.L. 1956 §§ 42-28.6-12 and 42-35-15.
 FACTS AND TRAVEL
Gregory Daniels (Appellant) had been an Officer with the City of Providence Police Department for thirteen years. During that time, he received many departmental commendations and awards, as well as several letters of praise, for his police work. Roderick Soares had been a Providence police officer since 1996. Soares initially worked in the patrol bureau, but later served in the mounted command. The Appellant successfully sought an assignment with the mounted command while Soares was there. From the beginning, the two officers did not get along. In January 2000 Soares left the mounted command and returned to the patrol bureau.
On April 5, 2001 at approximately 11:15 p.m., Soares and Officers Nelson Valdivia, Vincent Sollito and Michael Fallon were present at the intersection of Weybosset and Clemence Streets as part of a security detail that Lieutenant Timothy Lee had formed to report to certain nightclub locations for crowd control. Officer John Muriel was nearby, working a separate detail at the Johnson and Wales campus. Sergeant Patrick McNulty was the sergeant in charge of that downtown location that evening, Lieutenant Thomas Verdi was the executive officer, and Captain Richard Tarlaian was the commanding officer in charge. Three members of the mounted command — Officer Antonio Laranjo, Officer John McKenna, and the Appellant — were also present on horseback.
Lee had paired Soares with Valdivia, ordering the two officers to walk over to the area of the nightclubs. Soares and Valdivia met up with Muriel at the intersection of Weybosset and Clemence Streets. McKenna, Laranjo, and the Appellant approached these officers on their mounts. A security camera located on a Johnson and Wales University building videotaped much of what transpired thereafter. In full view of the public and the other officers present, Soares and the Appellant engaged in a physical altercation. During the course of this altercation, the Appellant made an aggressive movement with his mount toward Soares. After the Appellant disengaged from Soares, Soares had further interaction with Laranjo, who remained on his mount. The Appellant then dismounted and approached Soares. Though the other officers initially got between the two, the Appellant moved through them and got within less than an arm's length from Soares, who had moved to the middle of Weybosset Street. The Appellant hit Soares with his left hand, causing Soares to fall backward onto the street. Though the Appellant then moved away from Soares, the latter then struck the Appellant in the leg with a "night stick." The Appellant then moved back toward Soares. Soares drew and pointed his duty weapon at Soares, but one of the other mounted officers was able to separate them. The Appellant and Soares left the area of Weybosset and Clemence Streets headed in the same direction, but on opposite sides of the street, out of the view of the camera that had videotaped the incident. Though the other officers attempted to keep Soares and the Appellant apart, the two were able to continue a verbal exchange that climaxed when the Appellant once again moved toward Soares to confront him. Laranjo positioned his mount between the two, and the Appellant radioed McNulty, his supervising sergeant, who arrived on the scene minutes later.
On August 1, 2002, Colonel Richard T. Sullivan, Chief of Police for the City of Providence (Chief), issued a sworn complaint against the Appellant that alleged seven violations of the Rules and Regulations of the Providence Police Department as a result of the incident that occurred during the late evening of April 5, 2001 and early morning of April 6, 2001. The Chief's complaint recommended that the Appellant be terminated from the Department. Pursuant to his rights under the LEOBR, the Appellant requested a hearing and selected Sgt. William Pedchenko, Jr. as his partial Committee representative. The Department selected Major Dennis Simoneau as its representative. Pursuant to G.L. 1956 §42-28.6-4(f)(ii), Presiding Justice Joseph F. Rodgers, Jr. selected Capt. Paul J. Andrukiewicz of the Coventry Police Department as Chairman of the three person Hearing Committee. The Hearing Committee held eight days of hearings, beginning on November 19, 2001 and concluding on March 28, 2002. On May 20, 2002, a majority of the Hearing Committee voted to sustain the charges against the Appellant and deferred to the Chief's recommendation for termination.
The Appellant filed a timely appeal with this Court on May 28, 2002, naming the individual members of the Hearing Committee as Defendants. The Appellant argues that the Hearing Committee erred by 1) not issuing findings of fact in each issue of the case, in violation of G.L. 1956 § 42-28.6-11(b) and applicable case law; 2) ignoring irrefutable exculpatory evidence; 3) admitting in evidence complaints of the Appellant's alleged verbal abuse, improper use of pepper spray, and other unsubstantiated complaints; and 4) allowing, over the Appellant's objection, Major Simoneau's inclusion on the Hearing Committee despite his prior access to evidentiary matters, in violation of G.L. 1956 §42-28.6-6(b). On June 10, 2002 the City of Providence Police Department's motion to intervene as a party defendant was granted.
 STANDARD OF REVIEW
"The Law Enforcement Officers' Bill of Rights is the exclusive remedy for permanently appointed law enforcement officers who are under investigation by a law enforcement agency for any reason that could lead to disciplinary action, demotion or dismissal." City of East Providencev. McLaughlin, 593 A.2d 1345 (R.I. 1991) (citing Lynch v. King,120 R.I. 868, 870 n. 1, 391 A.2d 117, 119 n. 1 (1978)). Under the provisions of the act, an officer facing departmental charges may request a hearing before a Hearing Committee composed of three active law enforcement officers. General Laws 1956 §§ 42-28.6-1 and 42-28.6-4. The Hearing Committee has broad discretion to modify in whole or in part the sanctions that the charging authority recommends. Culhane v.Denisewich, 689 A.2d 1062 (R.I. 1997) (citing State Department ofEnvironmental Management v. Dutra,1211 R.I. 614 (R.I. 1979)). Appeals from the decisions of such Hearing Committees are taken pursuant to G.L. 1956 § 42-28.6-12, which provides that the Hearing Committee "shall be deemed an administrative agency and its final decision shall be deemed a final order in a contested case within the meaning of §§ 42-35-15
and 42-35-15.1."
Section 42-35-15(g) of the General Laws governs this Court's review of a decision of the Hearing Committee. This section provides:
 "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error or law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision, this Court may not substitute its judgment for that of the agency with respect to the credibility of witnesses or the weight of evidence concerning questions of fact. Ctr.for Behavioral Health, R.I., Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. NewportShipyard v. R.I. Comm'n for Human Rights, 484 A.2d 893 (R.I. 1984). Substantial evidence is that which a reasonable mind might accept to support a conclusion, Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (1981)), even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v.Dep't. of Employment Sec., 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record."Milardo v. Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981). Questions of law, however, are not binding on a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts of Interests Comm'n, 509 A.2d 453, 458 (R.I. 1986). If competent evidence supports the Commission's findings and conclusions, this Court is required to uphold them. R.I. Pub.Telecomms. Auth. v. R.I. Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994). "[L]egally competent evidence is marked `by the presence of "some" or "any" evidence supporting the agency's findings.'" State v. R.I. StateLabor Relations Bd., 694 A.2d 24, 28 (R.I. 1997) (citing Envtl.Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993)).
 The Hearing Committee's Findings of Fact
The Appellant argues that the Hearing Committee did not issue findings of fact and conclusions in each issue of the case and did not delineate how it resolved evidentiary conflicts, all in violation of G.L. 1956 § 48-28.6-11(b) and applicable case law. It is the Appellant's contention that the Hearing Committee's decision fails to resolve disputed issues, specifically 1) the conflict between the Appellant's and Appellee's respective views of the Appellant's actions concerning his mount, 2) whether the Appellant pushed Soares to the ground after dismounting from the horse, 3) whether the Appellant sprayed Soares with pepper spray, and 4) whether the Appellant attempted to restart the altercation out of the view of the camera videotaping the incident. The Appellant therefore maintains that the Hearing Committee did not base its decision on findings of fact as mandated by the LEOBR. Conversely, the Appellees argue that the Appellant's argument is merely an attempt to have this Court reassess the credibility of the witnesses who testified as to what was recorded on videotape. It is the Appellee's contention that it is not the function of this Court to reassess the findings of the Hearing Committee, which has already assessed witness credibility. The Appellee maintains that the Hearing Committee's written decision did make findings of fact and that the videotape evidence comports with the "some" or "any" evidence standard.
General Laws, § 42-28.6-11(b) requires that "[a]ny decision, order, or action taken as a result of the hearing shall be in writing and shall be accompanied by findings of fact," which "shall consist of a concise statement upon each issue in the case." The requirement that a hearing committee render its conclusions in the form of findings of fact is mandatory. Dionne v. Jalette, 641 A.2d 744, 745 (R.I. 1994). This Court must determine whether some legally competent evidence supports the Hearing Committee's findings of fact. City of Pawtucket, Police Div., v.Ricci, 692 A.2d 678, 682 (R.I. 1997). A LEOBR hearing committee's decision should inform the court about how evidentiary conflicts were resolved or advise it of the basic findings on which the ultimate findings rested. Dionne, 641 A.2d at 745 (citing Hooper v. Goldstein,104 R.I. 32, 43, 241 A.2d 809, 815 (R.I. 1968)). The hearing committee must provide "an ample decisional demonstration of the grounds upon which an ultimate conclusion is predicated." Id.
In the present case, the Complaint against the Appellant lists seven Rules and Regulations of the Providence Police Department and recommends his termination based on his violation of those seven Rules and his prior unacceptable conduct. The Appellant's violations of the Rules stem from the April 5-6, 2001 incident with Soares, the details of which with the most serious consequences to the Appellant are outlined in the Complaint. In its written decision, the Hearing Committee restates the statutory mandate that it render a decision "upon each issue in the case," (Decision at 3) and then it proceeds to follow that mandate. The Hearing Committee decided against the Appellant on each of the seven violations of the Rules and, as required by § 42-28.6-11(b), provided concise statements for each decision.[1] Furthermore, the Hearing Committee made findings of fact that resolved disputed testimony concerning the details of the April 5-6, 2001 incident. The decision first recites the "facts" it found from its viewing of the video tape, and then determined the credibility and the weight of the witness' testimony to arrive at "additional findings of fact." (Decision at 4).
The Hearing Committee's additional findings of fact include, first, its determination, based on Inspector DelRio's testimony, that the Appellant's movement on horseback toward Soares was an "aggressive movement" that, furthermore, could not be viewed as an appropriate training exercise. Next, after reviewing the video tape evidence, the Hearing Committee found that the Appellant made contact with Soares that caused the latter to fall backward onto the street. The Hearing Committee also found that the Appellant had used pepper spray against Soares from Fallon's testimony that he saw the Appellant take out his pepper spray can, shake it, and point it at Soares, and from Valdivia's testimony that he had recognized the residual from pepper gas spray on Soares' uniform. Finally, the Hearing Committee also discerned from Laranjo's testimony that the altercation between the Appellant and Soares rekindled out of camera view when the two exchanged further words and when the Appellant walked toward Soares to confront him again. These findings of fact, gleaned from the "irrefutable evidence of the video tape of the incident and the testimony of the witnesses" (Decision at 8), serve as the foundation for the Hearing Committee's ultimate decision to sustain the Chief's recommendation for termination. Accordingly, the Hearing Committee did not violate statutory provisions or prejudice the substantial due process rights of the Appellant because it provided the necessary findings of fact on which it based its decision.
 Testimonial Evidence Not Referred to in the Hearing Committee's Decision
The Appellant further argues that the Hearing Committee's decision was arbitrary, capricious and otherwise erroneous because it ignored the testimony of some of the officers present who provided irrefutable and exculpatory evidence. The Appellant contends that the Hearing Committee neglected or ignored the videotaped evidence that showed he was defending himself against the aggression of Soares. The Appellant also contends that the Hearing Committee selected testimony from Lt. Verdi and Officer Valdivia and mischaracterized it to support its conclusion while failing to mention in its decision the repeated impeachment of Soares during cross examination. On the other hand, the Appellee argues that the Chief's testimony demonstrated that intolerance for workplace violence is consistent with predominant trends in labor relations and employment law. It is the Appellee's position that the Hearing Committee's decision comports with the Chief's testimony concerning zero tolerance for workplace violence and that the Committee placed little importance on the Appellant's "anecdotal" evidence of misbehavior between officers.
This Court need only determine whether some legally competent evidence supports the Hearing Committee's findings of fact. Ricci, 692 A.2d at 682. "[L]egally competent evidence is marked `by the presence of "some" or "any" evidence supporting the agency's findings.'" State v. R.I. StateLabor Relations Bd., 694 A.2d at 28. The agency will decide the importance of an issue, and it need not comment on every piece of evidence presented. Charles H. Koch, Jr., Administrative Law andPractice, § 5.62 (2d ed. 1997). In the instant case, the presence of the video tape evidence is sufficient to support the Hearing Committee's findings. In its decision, the Hearing Committee noted that while the video tape could not be left to speak entirely for itself, it was nonetheless irrefutable evidence. In each statement accompanying its decision on each of the seven specific complaints, the Hearing Committee refers to the video tape evidence to rule against the Appellant. In addition to this video tape evidence, the Hearing Committee relied on the testimony of the officers — Valdivia, Muriel, Fallon, and Laranjo — who were witnesses to what had happened and what was said. The Hearing Committee determined the credibility of this witness testimony and weighed it accordingly. There is no requirement that the Hearing Committee comment on the credibility and weight it gives to every strand of evidence, including witness testimony. This Court may not substitute its judgment for that of the Hearing Committee with respect to the credibility of witnesses or the weight of evidence concerning questions of fact. As its decision is based on competent evidence supported by the record, the Hearing Committee neither acted arbitrarily or capriciously, nor abused its discretion in deciding to affirm the Chief's recommendation.
 Citizens' Complaints
The Appellant argues that the Hearing Committee improperly admitted in evidence citizens' complaints of the Appellant's alleged verbal abuse, his improper use of pepper spray, and other unsubstantiated complaints about him. He maintains that the Hearing Committee thus erroneously subjected his entire service record to inquiry. The Appellant contends that there was only one disciplinary action taken against him and that, though the Chief testified as to citizen complaints against him, the Chief could not identify any such complaints and had to acknowledge that none were documented or discussed with the Appellant. Essentially, he argues that these complaints of misconduct amount to legal nullities because they were either withdrawn, not prosecuted, or adjudicated in his favor, but the Chief nonetheless relied on this information in formulating his recommendation for termination. Conversely, the Appellees argue that the introduction of evidence related to the complaints against the Appellant is authorized by G.L. 1956 § 42-28.6-6(a), which provides for the admittance of evidence possessing probative value. They contend that in employment disciplinary cases, complaints against employees, whether founded or unfounded, adjudicated or unadjudicated, are probative and relevant in assessing work history for the purpose of imposing discipline, as well as establishing the Appellant's patterned behavior of abusing citizens. The Appellees submit that because the Appellant was accorded the opportunity to introduce evidence of his commendations, they should be allowed the corresponding opportunity to introduce evidence of civilian complaints against him. Moreover, the Appellees argue that because the Hearing Committee gave no evidentiary value to the evidence concerning civilian complaints, this Court should ascribe no error.
Section 42-28.6-6(a) of the General Laws deals with the admissibility of evidence at a hearing conducted under the LEOBR. This section provides:
 "[e]vidence which possesses probative value commonly accepted by reasonable and prudent men in the conduct of their affairs shall be admissible and shall be given probative effect. The hearing committee conducting the hearing shall give effect to the rules of privilege recognized by law, and may exclude incompetent, irrelevant, immaterial, and unduly repetitious evidence. All records and documents which any party desires to use shall be offered and made part of the record."
The Rhode Island Supreme Court has recognized that ". . . there may be occasions when it would be difficult for the charging authority to justify a recommendation of the type of severe punishment that triggers the creation of a hearing committee if that charging authority is relying on a single act of alleged misconduct." Zincone v. Mancuso, 523 A.2d 1222, 1225 (R.I. 1987). It is not merely the evidence of each incident of misconduct that would justify a recommendation for termination, but rather the repeated nature of the misconduct or similar misconduct that would tend to show that the officer should be terminated. Id. Relevant evidence that would not be admissible in court, including hearsay evidence, is admissible at an administrative hearing. DePasquale v.Harrington, 599 A.2d 314, 316 (R.I. 1991); see also Koch, § 5.52.
In the present case, according to the Complaint, not only did the Chief base his recommendation for the Appellant's termination on the April 5-6, 2001 incident, but also on his "alleged prior unacceptable conduct as a Providence Police Officer." The Hearing Committee accepted documentary evidence from the Appellant in the form of commendations and certificates, and, from the Appellees, documentation of alleged complaints against him preceding the April 5-6, 2001 incident.[2]
Pursuant to § 42.28.6-6(a), both parties had the right to offer such documentation. Section 42-28.6-6(a) also authorized the Hearing Committee to exclude the documentation if it had determined that it was "incompetent, irrelevant, immaterial, and unduly repetitious." The Hearing Committee elected to enter this evidence into the record and, while it did not "discount" either the commendation or complaint files of the Appellant, it based its decision solely on matters relating to the April 5-6, 2001 incident.[3] Accordingly, the Hearing Committee's admitting evidence of his service record was not made upon unlawful procedure and was not in violation of statutory provisions.
 Composition of the Hearing Committee
The Appellant additionally argues that Major Simoneau should not have been a member of the Hearing Committee because of his access to evidentiary matters prior to the hearing, in violation of G.L. 1956 § 42-28.6-6(b).[4] He maintains that Major Simoneau's appointment does not comport with the legislative intent of § 42-28.6-6(b) to create the "semblance of an open mind" to any panelist serving on an LEOBR committee. The Appellant notes that his objection to Major Simoneau's appointment was made first in his response to the Chief's complaint and again when the hearing was convened. The Appellees respond that LEOBR committees are similar to tripartite arbitration panels and that partial hearing designees, as advocates whose duty is to ensure that the positions of the respective parties whom they represent are advanced during committee deliberations, are not required to adhere to the same standard of neutrality as a judge. The Appellees argue that even assuming that the Appellant had a legal basis on which to challenge Mjr. Simoneau's selection, that opportunity was waived because the Appellant did not seek to disqualify Major Simoneau before the conclusion of the hearings by applying to the Superior Court pursuant to G.L. 1956 §42-28.6-14(2).[5] They contend that G.L. 1956 § 42-28.6(b) prohibits pre-hearing presentation of evidence to a hearing committee collectively and does not specifically preclude any individual partial member from exposure to evidence in a case in which he will be serving as a secondary advocate.
The LEOBR provides for adjudication of law enforcement officer disciplinary cases by a tripartite hearing committee. General Laws 1956 § 42-28.6-4(d)-(f). Section 42-28.6-4 establishes how the hearing committee is selected. The hearing committee must consist of three individuals who are employed within the state as law enforcement officers: the aggrieved officer selects one member, the chief or the highest ranking officer of the particular enforcement agency concerned selects one member, and then both of these members either selects the third member or petitions the presiding justice of the superior court to select the third member, who will then serve as chairman of the committee. General Laws 1956 § 42-28.6-4(d)-(f). The purpose behind the requirement that hearing committee members be law enforcement officers is to protect those charged with departmental violations by ensuring that the committee is composed of individuals who are familiar with departmental practices and procedures during the appropriate time frame. In re Denisewich, 643 A.2d 1194, 1198 (R.I. 1994). Our Supreme Court noted that officers carrying out the daily routine of police work in proximity to officers allegedly engaging in misconduct are in the best position to judge another officer's actions. Id. The proper remedy for an infringement of rights under the LEOBR is to apply to the Superior Court "for any order directing the law enforcement agency to show cause why the right should not be afforded." General Laws 1956 § 42-28.6-14(2);see also In re Sabetta, 661 A.2d 80, 83 (R.I. 1995) (concluding that aggrieved officer should have applied in Superior Court for an order directing the municipality to show cause why his right to an investigation conducted without public comment should not be afforded). "Orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts. U.S.v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952).
In the present case, the parties selected their respective Hearing Committee representatives according to the procedures set forth in §42-28.6-4, and then petitioned the presiding justice of the Superior Court to appoint the neutral third member. Though § 42-28.6(b) prohibits the presentation of evidence to the entire Hearing Committee prior to the hearing, there is no provision within the LEOBR that prevents a single committee member from serving simply because he was exposed to potential evidence in the course of his or her duties as a police officer. Furthermore, pursuant to § 42-28.6-14(2), the remedy available to the Appellant to object to Major Simoneau's appointment was to apply for an order in Superior Court directing the City of Providence to show cause why Major Simoneau should remain as the City's representative member on the Hearing Committee. The Appellant's objections to Major Simoneau's presence on the Hearing Committee made by letter dated August 3, 2001 to the Providence Police Department and again on the first day of hearing (Tr. of November 19, 2001 at 15 4-9) are not relevant to the present appeal because they are objections that should have been made to the Superior Court before the conclusion of the administrative proceedings. The Hearing Committee had made this determination at the first hearing, and even instructed the Appellant as to the appropriate procedure to follow for his objection. (Tr. of November 19, 2001 at 19). It is not within the purview of this Court to disturb the Hearing Committee's decisions unless the Hearing Committee had erred with respect to an appropriate objection made at an appropriate time. Therefore, the Hearing Committee did not violate statutory provisions or abuse its discretion in allowing Major Simoneau to remain on the panel over the Appellant's objection.
 CONCLUSION
On review of the entire record in this matter, this Court finds that the Hearing Committee's decision to deny the Appellant's appeal is supported by the reliable, probative, and substantial evidence contained in the record and was not in excess of its statutory authority or an abuse of discretion. The Hearing Committee's decision has not prejudiced the Appellant's substantial rights. Accordingly, the Hearing Committee's decision is affirmed. Counsel shall submit the appropriate judgment for entry.
[1] The Hearing Committee's decision states the following findings:
Specification 1: Part II, Section 200.2, Obedience to Laws and Rules: Guilty The facts as exhibited in the video tape recording showing Officer Daniels while on duty and in uniform as a member of the mounted patrol of the Providence Police Department, in full view of the public, engaged in a physical altercation with another officer, is in and of itself, sufficient to sustain this charge as his actions are clearly outside the boundaries of what is considered acceptable conduct within the confines of the rules and regulations of the department.
Specification 2: Part II, Section 200.5, Standard of Conduct: Guilty Again, the most damaging and convincing evidence is the video recording of the incident. It should be obvious to even the most casual observer, that Officer Daniels (sic) actions during the course of this incident stand to bring discredit upon not only himself and the other officers present, but on the entire Providence Police Department.
Specification 3: Part II, Section 200.6, Rules Governing Conduct: Guilty Clearly, as evidenced in the video recording, Officer Daniels (sic) actions are contrary to good order, discipline and accepted standards of conduct, especially for a police officer who is on duty, and whose purpose is to maintain order. Engaging in a physical altercation with another officer, especially while in uniform, while on duty in full view of the public, while the purpose is to maintain public order, cannot be construed as anything but disorder, and under no circumstances could be viewed as acceptable conduct.
Specification 4: Part II, Section 200.12, Courtesy: Guilty Again, the video tape shows convincingly, that Officer Daniels did not behave in a civil or orderly manner, and that he did in fact engage in a physical altercation, while on duty, with another uniformed member of the department. Despite the argument of potential extenuating circumstances, his actions were clearly in violation of this section of the rules of conduct.
Specification 5: Part II, Section 200.13, Demeanor: Guilty Once again, the video tape shows Officer Daniels engaged in conduct that obviously detracts from a professional image, while on duty and in uniform, and obviously in full view of the public. His actions as viewed on the tape, undoubtedly do nothing to bring credit to the Providence Police Department or the City of Providence.
Specification 6: Part II, Section 200.14, Conduct Toward Personnel and Department: Guilty Clearly, as demonstrated in the video tape recording, Officer Daniels (sic) actions toward Officer Soares are not respectful, in that he engaged Soares in a physical altercation in the middle of a downtown street, while on duty, in uniform, and in full view of the public. His actions most certainly constitute an injury to the reputation of not only the Providence Police Department, but to the law enforcement profession as a whole. In his own testimony, Daniels said that he dismounted and approached Soares to talk to him eye to eye and man to man to try to defuse the situation. His actions are demonstratively inconsistent with maintaining an objective attitude, regardless of provocation.
Specification 7: Part II, Section 201.6, Duty Time Limited to Police Work: Guilty Officer Daniels (sic) actions during the incident as captured on video are clearly beyond what anyone would consider police work. He was on duty, in uniform and responsible for keeping the peace. Engaging in an altercation with another uniformed police officer in the middle of a downtown, high crime district, is inconsistent with his responsibilities, and cannot by any stretch of the imagination be considered police work.
[2] The Chairman of the Hearing Committee accepted this documented evidence, stating
". . . if there's documentation and it's properly received, that regardless of whether it was deemed to be unfounded, unwarranted, unjustified, or justified in affirm, that we will allow that to be submitted evidence for whatever probative value we determine in and we determine to lend to it. We can make the determination amongst ourselves about how much weight we're going to give that evidence." (Tr. of March 27, 2002 Hearing at 186).
[3] The Hearing Committee stated, "[i]n the final analysis, while we cannot discount either the commendation and complaint files of Officer Daniels, or the possibility of the existence of potentially extenuating circumstances, our decision here must focus on the issue at hand." (Decision at 8-9).
[4] Section 42-28.6-6 of the General Laws provides that "[n]o statements, documents and/or other evidence and no copies of any statements, documents and/or other evidence shall be presented to the hearing committee prior to the hearing."
[5] Section 42-28.6-14(2) of the General Laws provides:
"Any law enforcement officer who is denied any right afforded by this subtitle may apply, either individually or through his or her certified or recognized employee organization, to the superior court where he or she resides or is regularly employed for any order directing the law enforcement agency to show cause why the right should not be afforded."