**CITY OF PAWTUCKET, POLICE DIVISION**

v.

**John J. RICCI, Jr.**

**No. 95–98 M.P.**

Supreme Court of Rhode Island.

April 14, 1997.

Robert P. Brooks, Mark William Russo, Providence, for Plaintiff.

Joseph F. Penza, Jr., Warwick, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case came before the court on a petition for certiorari by the city of Pawtucket (petitioner or the city) seeking review of the final decision of a hearing committee (committee) convened pursuant to the Law Enforcement Officers' Bill of Rights, G.L.1956 chapter 28.6 of title 42. The city had charged the respondent, Patrolman John J. Ricci, Jr. (respondent), with knowingly submitting an incomplete and incorrect application for employment and for violating certain rules and regulations of the Pawtucket police department. A majority of the three member committee voted to dismiss the city's complaint on the basis that the employment-application question, to which the respondent improperly responded, violated G.L.1956 (1986 Reenactment) § 28–5–7(7), of the state Fair Employment Practices Act (FEPA). In spite of its decision to dismiss the charges, the committee made findings of fact on the merits of the case favorable to the respondent. The city contends that the committee erred in dismissing its complaint against the respondent and further contends that the committee's findings of fact on the merits of the case were erroneous. For the reasons that follow, we affirm the committee's decision in part and reverse in part.

### I

### Background

In September of 1989 respondent completed an application for employment with the Pawtucket police department (department). In response to an employment-application question inquiring whether the applicant had "ever been arrested for any criminal or mo-

tor vehicle violation" respondent reported that he had been arrested in Pawtucket in 1976 for "[p]ossession of * * * marijauna [*sic*]."[1] He also noted that in consequence thereof he received a sentence of one year's probation. The respondent signed the employment application that contained a certification that answers provided by the applicant were complete and accurate and that any misrepresentation contained therein would be cause for immediate rejection and/or dismissal.

After becoming a candidate for the Pawtucket police department, respondent attended the Rhode Island Municipal Police Academy (police academy). On the application for enrollment to the police academy respondent was again asked whether he had ever been arrested for any criminal or motor-vehicle violation. In response respondent noted that he had been arrested in Pawtucket in 1974 for urinating in public and that as a result received a sentence of one year's probation.[2] The respondent then indicated that this offense was expunged in November of 1989. Following respondent's graduation from the police academy he was appointed to the Pawtucket police department.

Approximately four years later, while investigating an unrelated complaint against respondent, the department allegedly discovered certain arrests that had been omitted from respondent's application for employment, including a 1975 arrest for the public

consumption of alcohol and littering, a 1975 arrest for indecent exposure, and a 1976 arrest for larceny under $100. Subsequently the department charged respondent with knowingly providing an incomplete and incorrect application for employment in violation of G.L.1956 § 11–18–1.[3] The department also charged respondent with violating various provisions of article 27, section 46, of the rules and regulations of the Pawtucket police department, including commission of a crime under any statute, law, or ordinance, filing a false official statement, and conduct tending to cast disrepute on the division.[4] As a result of these alleged violations the chief of police recommended that respondent be terminated from his employment with the Pawtucket police department.

After receiving notice of the charges against him, respondent requested a hearing pursuant to the provisions of § 42–28.6–4 of the Law Enforcement Officers' Bill of Rights. A hearing was held before a hearing committee on November 22 and 29 and December 2, 1994. At the commencement of the proceedings, respondent made four motions to dismiss the charges against him. In his first motion to dismiss, respondent claimed that he could not be found in violation of the police department's disciplinary rules because at the time of the alleged misconduct he was not a member of the Pawtucket police department. The respondent's second motion to dismiss challenged the authority of

---

1. The respondent was actually arrested in August of 1975 but inadvertently reported the arrest as having occurred in 1976.

2. The respondent testified that the indecent exposure charge resulted from a police officer having observed him urinating in the park. The police report, however, describes an obscene and deliberate exposure of the genitals on the part of respondent. Both the charge of indecent exposure and the charge of possession of marijuana stemmed from respondent's arrest in August 1975. The respondent received a sentence of one year's probation on the possession-of-marijuana charge. Although charges were filed on the indecent exposure allegations they were evidently not pursued further.

3. General Laws 1956 § 11–18–1 provides in pertinent part:

"**Giving false document to agent, employee, or public official.**—No person shall knowingly give to any agent, employee, servant in public

or private employ, or public official any receipt, account, or other document in respect of which the principal, master, or employer, or state, city, or town of which he or she is an official is interested, which contains any statement which is false or erroneous, or defective in any important particular, and which, to his or her knowledge, is intended to mislead the principal, master, employer, or state, city, or town of which he or she is an official. Any person who violates any of the provisions of this section shall be deemed guilty of a misdemeanor, and shall, on conviction thereof, be imprisoned, with or without hard labor, for a term not exceeding one year, or be fined not exceeding one thousand dollars ($1,000)."

4. Each of these specific charges, however, stemmed from respondent's alleged misconduct of filing an inaccurate application for employment.

the hearing committee to find his conduct in violation of state law and thereby in breach of article 27, section 46(1), of the police department's regulations.[5] In his third motion respondent requested that all the charges against him be dismissed on the ground that the employment-application question he allegedly answered falsely required the disclosure of prior arrests in contravention of the FEPA. In his fourth motion to dismiss, respondent asserted that the department's charge that his conduct cast disrepute on the division was unconstitutionally vague.

The hearing committee took respondent's motions to dismiss the complaint under advisement and deferred ruling on the matters until after the conclusion of the presentation of the evidence. It also bifurcated the proceeding for the purpose of determining, first, respondent's guilt and, second, the appropriateness of the department's recommendation of termination.

On February 2, 1995, after a review of the evidence, the hearing committee by majority vote dismissed those charges against respondent that alleged violation of the department's disciplinary rules. A majority of the committee determined that at the time respondent allegedly falsified his employment application, he was not a member of the police department and therefore not subject to its internal regulations. In conjunction therewith, the committee refused to make an administrative determination that respondent's conduct violated existing state law. Most critically, the committee again by majority vote dismissed the charge remaining against respondent—that he knowingly provided an incomplete and inaccurate application for employment—on the ground that the employment-application question to which he allegedly filed a false response was posed by the department in violation of the FEPA. In support of its decision the committee referred to § 28–5–7 of the FEPA, which pro-

vided at that time that, "[i]t shall be an unlawful employment practice: * * * (7)[f]or *any* employer to include on any application for employment a question inquiring * * * whether the applicant has ever been arrested or charged with any crime." (Emphasis added.)[6]

Notwithstanding dismissal of the complaint, the hearing committee weighed the evidence and made findings of fact on the merits of the case. It reasoned that both parties were entitled to hear how the committee would have ruled on the charges had respondent's third motion to dismiss the complaint not been granted. Accordingly, a majority of the committee first determined that respondent had not been arrested for larceny in 1976 and therefore was not required to report the incident. The majority of the committee next determined that the consumption-of-alcohol and littering charges were violations as opposed to criminal offenses and thus fell outside the employment application's scope of inquiry. Finally, the committee then considered respondent's arrest in August of 1975 for both possession of marijuana and indecent exposure. A majority of the committee determined that respondent had an obligation to list both offenses on his application for employment but failed to do so. Nonetheless, the committee, one member dissenting, found that relevant city officials were aware of respondent's arrest history at the time of his employment and that, therefore, any deficiencies appearing on his application for employment had been waived.

Aggrieved by the hearing committee's decision, the city petitioned this court for writ of certiorari on February 22, 1995. This court granted the city's petition for writ of certiorari on January 11, 1996, pursuant to § 42–28.6–12, of the Law Enforcement Officers' Bill of Rights.[7]

---

5. Section 46, subsection 1, of the Pawtucket police department's disciplinary rules is entitled "[c]ommission of a crime under any statute, law or ordinance."

6. General Laws 1956 (1986 Reenactment) § 28–5–7(7) was amended subsequent to the events in this case so as to exclude law enforcement officers from its scope. P.L.1995, ch. 235, § 1.

7. At the time the petition for certiorari was filed with this court G.L.1956 (1993 Reenactment) § 42–28.6–12 (repealed by P.L.1995, ch. 29, § 1) of the Law Enforcement Officers' Bill of Rights provided in pertinent part:
"[T]he city or town may seek review of the final decision of the hearing committee by writ of certiorari to the supreme court on the grounds that the decision was arbitrary or ca-

## II

### Dismissal of the Complaint

■ The city contends that it was error for the hearing committee to dismiss the charge of filing a false document on the ground that its employment-application query violated § 28–5–7(7) of the FEPA. The city asserts that if its application question violated a provision of the FEPA, respondent had a right not to answer it. However, in no circumstances, the city argues, does the FEPA confer upon respondent the right to submit a false and misleading employment application. We agree.

■ In *State v. Ricci*, 668 A.2d 320 (R.I. 1995), this court held that although § 28–5–7(7) prohibits an employer from inquiring into an applicant's arrest history, it does not provide the applicant with an absolute defense to a charge of filing a false document. Accordingly we reversed the Superior Court's dismissal of the criminal complaint against the respondent on the basis of the city's violation of the FEPA. 668 A.2d at 321. "Once an individual undertakes to answer a question and provides information that could have been withheld, that individual [we noted] is obligated to speak the truth." *Id.* In such circumstances an applicant should decline to answer the question asked and look to the remedies available under the FEPA rather than provide inaccurate information in response to the application question. *Id.*

In light of our opinion in *Ricci*, respondent concedes that the committee erred in dismissing the charges against him on the basis of the city's violation of the FEPA. Nonetheless, respondent contends that the error is harmless because the committee rendered a decision on the merits of the case notwithstanding its dismissal of the complaint. The decision of the hearing committee, respondent asserts, is fully supported by the evidence, averting the necessity of a remand of the case by this court. With this contention we agree.

pricious or characterized by abuse of discretion or affected by error of law."

## III

### Findings of Fact

■ The Law Enforcement Officers' Bill of Rights is the exclusive remedy for permanently appointed law-enforcement officers subject to proposed disciplinary action. *City of East Providence v. McLaughlin*, 593 A.2d 1345, 1348 (R.I.1991). Under the provisions of the act an officer facing departmental charges may request a hearing before a hearing committee composed of three active law-enforcement officers. Sections 42–28.6–1 and 42–28.6–4. The hearing committee is not bound by the charging authority's recommendations when investigating allegations of misconduct. *McLaughlin*, 593 A.2d at 1348. It may hold hearings, call witnesses, make findings of fact and may "sustain, modify, or reverse the charges of the investigating authority." *Id.*; *accord* § 42–28.6–11(a); *Culhane v. Denisewich*, 689 A.2d 1062, 1063 (R.I.1997). A city or town aggrieved by the hearing committee's decision may seek review by petitioning this court for a writ of certiorari. Section 42–28.6–12.

■ When undertaking a review of the hearing committee's decision rendered pursuant to § 42–28.6–11(b), this court does not weigh the evidence or engage in factfinding. *Dionne v. Jalette*, 641 A.2d 744, 745 (R.I. 1994); *McLaughlin*, 593 A.2d at 1348. Our review is limited, rather, to an examination of the record to determine whether some competent evidence exists to support the committee's findings. *Dionne*, 641 A.2d at 745; *McLaughlin*, 593 A.2d at 1348; *Lantini v. Daniels*, 104 R.I. 572, 574, 247 A.2d 298, 299 (1968); *Hooper v. Goldstein*, 104 R.I. 32, 43, 241 A.2d 809, 814–15 (1968).

■ With these principles in mind this court must determine whether the findings of the hearing committee were supported by some legally competent evidence. In so doing, we recognize that the city bears the burden of proving respondent's misconduct by a fair preponderance of the evidence.[8] *In re Simoneau*, 652 A.2d 457, 461 (R.I.1995).

8. Because we conclude that the hearing committee should not have dismissed the charge of filing a false document, we do not reach the issue of

■ In the instant case a majority of the committee first determined that respondent had not been arrested for larceny in 1976 and, therefore, had no obligation to report the incident. Our review of the record reveals support for this conclusion. A record check from Massachusetts suggested that respondent had been charged in Taunton District Court with larceny under $100. It was respondent's unrebutted testimony, however, that an employee from Ann & Hope merely detained him on the suspicion of shoplifting. After respondent gave the employee his name and address, he left the store. The police were not called to the scene. Subsequently respondent received a summons to appear in court. The case was later dismissed with prejudice when a representative from the store failed to appear. We are of the opinion that the decision of the hearing committee was neither arbitrary nor capricious in respect to this issue.

■ A majority of the committee next determined that the offenses stemming from the December 1975 arrest—respondent's drinking in a park and littering—were minor infractions which constituted violations and were therefor not *criminal* offenses. As such the committee concluded that neither charge had to be listed in response to the application's inquiry of arrests for *criminal* violations. After his arrest, respondent paid a nominal fine for violating chapter 1524 of the Pawtucket city ordinance (drinking in a park). The littering charge was not pursued. We see no reason to conclude that the committee abused its discretion in deciding this issue.

■ Last, a majority of the committee concluded that respondent had an obligation to report his indecent-exposure charge on his application for employment. The committee, one member dissenting, determined, however, that the omission was harmless because city officials were aware of respondent's arrest record when they made the decision to employ him. We are of the opinion that there is competent evidence in the record to support this conclusion.

The testimony before the committee established that respondent campaigned for former mayor of Pawtucket Brian Sarault and that during this period respondent and Aimee Sarault (Brian Sarault's father) met frequently. In September of 1989 respondent applied for a position as a police officer with the Pawtucket police department. On his application for employment respondent reported that he had been arrested in 1976 for possession of marijuana but failed to report that he had also been charged with indecent exposure. In November of 1989 Aimee Sarault allegedly contacted respondent and advised him to have the indecent-exposure charge expunged from his record. When respondent informed Aimee Sarault that he did not have an attorney, Sarault allegedly stated that he would handle the matter.

Approximately four years later, the department filed disciplinary charges against respondent arising out of an unrelated incident. While investigating this incident, the department allegedly became aware of the arrests omitted from respondent's employment application. On May 3, 1994, the unrelated disciplinary charges against respondent were dismissed. Two days later, respondent received notice that he was being charged with knowingly providing an incomplete and incorrect application for employment and for violating certain disciplinary rules.

The respondent testified that after receiving notice of these charges, he contacted James Higgins (Higgins) (Brian Sarault's former law partner), hoping to obtain evidence that Higgins, at the request of Aimee Sarault, expunged the indecent-exposure charge from his arrest record. Higgins in return sent respondent several documents including a letter from the former chief of police for the city of Pawtucket, John W. Tomlinson. The letter, dated November 30, 1989, stated, "[t]his letter is to verify [that] John J. Ricci (DOB 12-6-55) does not have an Adult Criminal Record with the Pawtucket Police Department." The letter bore Chief Tomlinson's stamped signature and the

whether the committee erred in applying "the mixed motive" standard under the FEPA. *See*

G.L.1956 §§ 28-5-7.3 and 28-5-24(1).

stamp of the police department's identification bureau. Attached to this letter was the cover page of the August 1975 arrest report for possession of marijuana and indecent exposure. The respondent's "modus card" for the indecent exposure charge was also attached. Sergeant John Orzechowski (Orzechowski), the internal affairs officer for the Pawtucket police department, testified on cross-examination that a modus card lists an individual's arrest record and that at the time of the disciplinary hearing in 1994, respondent's modus card could not be found. Orzechowski also testified that if an individual's conviction is expunged, his or her modus card is usually pulled from the department's files. According to respondent, Higgins did not seek to expunge the indecent-exposure charge because Chief Tomlinson's letter indicated that respondent had no criminal record to expunge. The respondent asserted that in order for Chief Tomlinson to have determined that he had no criminal record, a background check must have been conducted. On cross-examination, Orzechowski conceded that had such a check been done, respondent's prior arrests would have been known to the administration.

As additional proof that respondent spoke with Aimee Sarault regarding the indecent exposure charge, respondent referred to his application for enrollment in the police academy completed January 19, 1990. The respondent testified that on the basis of his conversation with Sarault, he had indicated on his enrollment application that the "urinating in [the] park" arrest had been expunged "11/1989." The Director of Public Safety signed respondent's enrollment application on February 15, 1990. On cross-examination, Orzechowski conceded that had standard police procedure been followed, a background check would have been conducted on respondent when he first applied to the department in 1989 and again after his application for enrollment to the academy indicated a prior arrest. Consequently, all respondent's prior arrests should have been known to the department in late 1989 or early 1990. Orzechowski testified that the city made no attempt to determine whether the prior administration was aware of respondent's arrest history when the decision to employ him

was made. Orzechowski also admitted that had the prior administration wanted to employ respondent notwithstanding its knowledge of his arrest record, it could have done so.

■ From this evidence a majority of the hearing committee inferred that relevant city officials had conducted a background check on respondent and were aware of his arrest record when they made the decision to employ him. The city, on the other hand, contends that "evidence * * * on the knowledge of city officials was clearly open to alternative inferences." The committee's inferences, however, need only be supported by the existence of competent evidence. See *Dionne*, 641 A.2d at 745. In the court's opinion, competent evidence existed to support the conclusion of the hearing committee.

■ Alternatively the city asserts that it failed to present evidence on the issue of the city's knowledge because it was misled by the committee's decision to bifurcate the proceedings. The committee bifurcated the proceedings in order to determine, first, respondent's guilt and, second, the appropriateness of the department's recommendation of termination. In his opening argument respondent's counsel emphasized the city's knowledge of respondent's prior arrests as a primary defense to the charges against him. During the hearing, respondent presented evidence suggesting that the city had hired him despite its officials' being aware of his arrest record. The city failed to present any evidence to rebut this inference. Considering the importance of this issue, we are of the opinion that the city had an obligation to present evidence capable of negating this inference at the time the issue was raised.

Although we commend the city's efforts to require members of its police force to be forthright and honest, we find in the record sufficient evidence to support the committee's findings in favor of the respondent. Therefore, with the exception of the committee's decision to grant the respondent's third motion to dismiss the complaint, we conclude that the committee's findings of fact were supported by competent evidence.

For the reasons stated, the city's petition for certiorari is granted in part and denied in part. The order granting the respondent's third motion to dismiss the complaint is quashed. The decision of the hearing committee on the merits of the case is affirmed.