DECISION
This Court has before it an application for an order and petition for declaratory judgment pursuant to the Law Enforcement Officers Bill of Rights, G.L. 1956 § 42-28.6 et seq. The Town of Burrillville Police Department (Plaintiff or Town) is a municipal corporation organized under the laws of the State of Rhode Island. The International Brotherhood of Police Officers, Lodge 369 (Defendant or Union), is a labor organization that seeks to protect the interests and rights of its union members. Pursuant to G.L. 1956 § 9-30-1 et seq., this Court maintains jurisdiction over the present case.
 FACTS AND TRAVEL
The voters of the Town of Burrillville approved a Home Rule Charter (Charter) on November 8, 1988. The Charter became effective on January 1, 1989. On July 7, 1989, the Rhode Island General Assembly "ratified, confirmed, validated and enacted" the Burrillville Charter. See P.L. 1989, Ch. 256, § 1. The Charter also specifically contains a provision known as a "residency requirement" which mandates that all Town employees reside within Burrillville as a condition of employment.
Police Officer George Pedro (Pedro) is a permanent full time member of the Burrillville Police Department. Pedro was appointed as a probationary police officer in March of 1996. Pedro successfully completed the municipal police academy, as well as the mandatory one year probationary period. As such, Pedro is a member of the Defendant union. There is also no dispute that Pedro has been informed as to the requirement that he establish residency in the town of Burrillville within six months of completing the training academy.
When first employed, Pedro did in fact satisfy the residency requirement. On April 10, 1998, however, Pedro applied to the Burrillville Town Council (Council) for a waiver of the residency requirement. The parties have stipulated that Pedro was given an opportunity to address the members of the Town Council, including his personal reasons for requesting a waiver, at a hearing on May 18, 1998. At this hearing, the Town Council denied Pedro's request for waiver of the residency requirement. Apparently, Pedro maintained residency within Burrillville until approximately April of 2001, at which time Pedro purchased a home in the town of Cranston, Rhode Island. On September 21, 2001, Pedro informed his superior, Chief Bernard Gannon (Gannon), he would be taking up a temporary residence outside Burrillville. Chief Gannon responded by reminding Pedro that he could not reside outside Burrillville without first receiving a waiver of the residency requirement from the Council. Pedro wrote a second letter to Gannon on October 25, 2001 asserting that his failure to reside in Burrillville was only temporary. Gannon replied to this second correspondence in a letter dated October 29, 2001. Again, Pedro was given a written order to comply with the residency requirement. Pedro continued to violate the mandatory residency requirement.
On November 19, 2001, Gannon sent notice to Pedro charging him with insubordination for a failure to comply with the residency requirement for Town employees. As such, Pedro was suspended without pay for one day. This same letter also informed Pedro that a series of one day suspensions would continue for each and every day that he failed to satisfy the residency requirement. The Union, on Pedro's behalf, subsequently filed a grievance with the Town under the terms of their collective bargaining agreement. This grievance alleged a violation of the Law Enforcement Officers' Bill of Rights (LEOBOR) as outlined in section 42 chapter 28.6 of the Rhode Island General Laws. The Town denied the grievance. The Union then timely filed a demand to arbitrate.
On November 27, 2001, the Union filed a declaratory judgment action pursuant to G.L. 1956 § 42-28.6-13. Presiding Justice Rodgers heard oral argument on this claim. Justice Rodgers determined that the language of the Officers' Bill of Rights is silent on the issue of continuing violations. Therefore, as to the one day suspensions, Justice Rodgers found that "[e]ach day an officer refuses to obey the direct order of his superior constitutes a new violation. Each sanction imposed on the officer for said violation is a separate and distinct sanction."International Brotherhood of Police Officers, Local 369, Robert McBrier,President v. Town of Burrillville Police Department, 2001 Westlaw 1685593 (unpublished opinion). In his decision, Justice Rodgers ruled that officer Pedro did not have any statutory right to a hearing. Id. Thus, the Union's petition for declaratory relief was denied. Id.
In February of 2002, Pedro unsuccessfully attempted to comply with the residency requirement. After a brief reinstatement, Pedro was suspended again on February 5, 2002. On July 17, 2002, Gannon filed charges pursuant to G.L. 1956 § 42-28.6-4(a) and (b), recommending that Pedro's employment with the Town be terminated as a result of his failure to comply with the residency requirement. On the same day, Officer Pedro filed a timely request for a hearing pursuant to G.L. 1956 §42-28.6-4(c), including the nomination of his selected committee member. The Town selected its committee member choice two days late according to G.L. 1956 § 42-28.6-4(e). Thereafter, the Town filed the instant action pursuant to G.L. 1956 § 9-30-1, seeking declaratory relief. The Town is arguing, in effect, that Officer Pedro is not entitled to a hearing in accordance with LEOBOR.
 Specifically, the Town prays this Court:
 1. Declare that the recommended termination of Officer Pedro is not subject to the provisions of LEOBOR.
 2. Declare that the Town is not required to offer a hearing to Officer Pedro under LEOBOR.
 3. Such other relief as this Honorable Court deems equitable and just.
 STANDARD OF REVIEW
Rhode Island General Laws Section 9-30-1 defines the scope of the Uniform Declaratory Judgments Act including the scope of this Courts jurisdiction. General Laws Section 9-30-1 states:
 "The superior or family court upon petition, following such procedure as the court by general or special rules may prescribe, shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree."
"A declaratory-judgment action may not be used `for the determination of abstract questions or the rendering of advisory opinions.'" Sullivanv. Chafee, 703 A.2d 748, 751 (R.I. 1997) (quoting Lamb v. Perry,101 R.I. 538, 542, 225 A.2d 521, 523 (R.I. 1967)). Section 9-30-2
enumerates what parties may in fact bring a declaratory judgment action and Section 9-30-12 governs construction of the Uniform Declaratory Judgments Act and holds that it is to be "liberally construed and administered." See Berberian v. Travisono, 114 R.I. 269, 332 A.2d 121
(R.I. 1975). Also, "the existence of alternate methods of relief does not preclude a party from relief under the Uniform Declaratory Judgments Act."Id. at 272. Factors to be considered in determining whether or not to grant declaratory relief include "the existence of another remedy, the availability of other relief, the fact that a question may readily be presented in an actual trial. . . ." Id. at 273.
 PETITION FOR DECLARATORY RELIEF
As a preliminary matter, the Union asserts that the Town untimely filed its committee designee pursuant to G.L. 1956 § 42-28.6-4(e), and, as such, the statute requires the charges against Pedro be dismissed. In this regard, the Town could have cured this defect by filing a petition with the Presiding Justice of the Superior Court pursuant to G.L. 1956 § 42-28.6-4(e). For reasons unknown, the Town did not take this course of action and instead filed the instant suit for declaratory relief seeking a determination that Pedro is not entitled to a hearing under LEOBOR. Additionally, "[t]he language of Section 42-28.6 does not give the hearing committee the power summarily to dismiss charges for procedural violations of the Law Enforcement Officers' Bill of Rights." Inre Sabetta, 661 A.2d 80, 83 (R.I. 1995). Thus, this Court will proceed to address the substantive merits of this case.
There is no dispute that Officer Pedro has failed to satisfy a condition of his continued employment. This condition refers to the requirement that Pedro reside within the Town of Burrillville during his tenure as a police officer. The specific issue raised in Plaintiff's petition concerns whether or not Pedro must be afforded a "hearing," under G.L. 1956 § 42-28.6-4, before termination. They argue that Pedro has a vested right in his employment as he has been a full time officer for a number of years. The Town asserts that Pedro will receive a hearing before town officials, such as the Town Manager or the Town Council. The Town denies the contention that Pedro is entitled to a hearing under LEOBOR. The Town specifically argues that Pedro is not entitled to hearing under LEOBOR because the Charter, as an act of special legislation, trumps G.L. 1956 § 42-28.6 et seq., which exists only as general legislation. In rebuttal, the Union argues that, according to the terms of the collective bargaining agreement with the Town, Pedro may only be disciplined under the provisions of LEOBOR, which mandates that he receive a hearing before termination.
At the outset, it is important to distinguish between disciplinary violations that may be addressed under the provisions of LEOBOR and an obvious Town Charter employment requirement that remains unsatisfied. While construing the language of LEOBOR, the Supreme Court determined, "[t]hat [the] statute was enacted to protect police officers from infringements of their rights in the course of investigations into their alleged improper conduct." In re Denisewich, 643 A.2d 1194, 1196 (R.I. 1994) (citing Coalition of Black Leadership v. Cianci, 570 F.2d 12, 14 (1st Cir. 1978)). LEOBOR "is the exclusive remedy for permanently appointed law-enforcement officers subject to proposed disciplinary
action." City of Pawtucket, Police Division v. Ricci, 692 A.2d 678, 682 (R.I. 1997) (citing City of East Providence v. McLaughlin, 593 A.2d 1345, 1348 (R.I. 1991) (emphasis added)). However, traditional disciplinary charges must be differentiated from an unsatisfied prerequisite of employment found in the Town Charter and ultimately ratified by the State Legislature. Thus, LEOBOR is not the appropriate vehicle under which Officer Pedro should be asserting his rights, since his failure to fulfill the residency requirement is not in the nature of a disciplinary action as that term is used in Ricci.
Municipal cities and towns are often given greater authority in the area of self-government through the use of home rule charters. "Section 2 of article 13 [of the Rhode Island Constitution], the Home Rule Article, empowers cities and towns to adopt a charter and enact and amend local laws relating to its property, affairs, and government, providing such action is not inconsistent with the Rhode Island Constitution or laws enacted by the General Assembly." Hourihan v. Town of Middletown,723 A.2d 790, 791 (R.I. 1998) (citing In re Advisory Opinion to the Houseof Representatives, 628 A.2d 537, 538 (R.I. 1993)).
However, "the power of home rule is subordinate to the General Assembly's unconditional power to legislate [matters of statewide concern]." Amico's Inc. v. Mattos, 789 A.2d 899, 903 (R.I. 2002) (citingTown of East Greenwich v. O'Neil, 617 A.2d 104, 111 (R.I. 1992); WesterlyResidents for Thoughtful Development, Inc. v. Brancato, 565 A.2d 1262, 1264 (R.I. 1989); Marro v. General Treasurer of Cranston, 108 R.I. 192, 195, 273 A.2d 660, 662 (R.I. 1971)). "Although the General Assembly retains sovereign power . . ., we have recognized its right to grant permission to a municipality to legislate in areas already regulated by the general laws." Local No. 799, International Association ofFirefighters AFL-CIO v. Napolitano, 516 A.2d 1347, 1349 (R.I. 1986). Thus, the general rule is that laws of general application supersede conflicting home rule charter provisions unless the General Assembly ratifies and validates the inconsistent charter provision.
In the case at hand, the General Assembly has specifically ratified the Burrillville Town Charter, thereby conferring upon it the status of special legislation. Under the facts of this case, the voters of Burrillville adopted a home rule charter on November 8, 1988. Section 19.02 of the Burrillville Town Charter holds:
 "Every regular and full-time employee of the Town, except the certified personnel of the School Department, and those specifically exempted herein, shall, during their continuance of office or employment, reside in the Town of Burrillville; provided, however, the Council may by resolution, specifically exempt a particular person from the provisions hereof if the Council shall declare that it is unable to find a resident of the Town to meet the requirements of the position to be filled."
The Rhode Island General Assembly thereafter "ratified, confirmed, validated and enacted" the Home Rule Charter of the Town of Burrillville on July 7, 1989. P.L. 1989, ch. 256, § 1. Additionally, the Charter is in conflict with the general legislation of LEOBOR because the specific powers bestowed upon the hearing committee would serve to contravene the language of the Charter. If read in conjunction, a hearing committee organized under LEOBOR would have the power to invalidate the residency requirement found in the Charter. The end result is conflicting provisions of special and general legislation.
Our Supreme Court has previously dealt with and construed a home rule charter in this context. In Napolitano, various firefighters and intervening teachers brought a declaratory judgment action to enjoin the enforcement of a residency requirement found in the Providence Home Rule Charter. The Napolitano Court found that the General Assembly validated the Providence Home Rule Charter, thereby creating an exception to provisions of the general laws and thus special legislation. Id. There, the Supreme court stated that the residency requirement of "the home rule charter as a special act takes precedence over any inconsistent provisions of the general laws to the extent that they apply to Providence." Id. A new class of legislation is created when the General Assembly elects to ratify certain provisions of a city's home rule charter. Such ratification results in what is called special legislation, which works to trump explicitly any conflicting provision created by and through general legislation that is applicable to all cities and towns.
In Town of West Warwick v. Local 2045, Council 94, 714 A.2d 611 (R.I. 1998), the Court found that the termination of two town employees was proper, and their terminations were not subject to arbitration rights under the contract, because, under the applicable Town Charter, there was a mandatory condition precedent to employment that one not be a convicted felon. There, the West Warwick Town Charter contained a provision that specifically prohibited anyone who was or did become a convicted felon from being employed by the town. Id. In that case, the town discovered that two employees were convicted felons and as such sought their termination. Id. The two employees were afforded pre-termination hearings before their union filed grievances and a demand for arbitration, which was denied by the town. Id. Thereafter, the town sought a declaration from this Court that the terminations were not arbitral as a matter of law. Id. A Superior Court trial justice permanently stayed all arbitration proceedings after finding that the West Warwick Town Charter did not leave any room for discretion in regard to the enforcement of the mandatory employment conditions. Id.
More recently, in Town of West Warwick v. Local 1104, InternationalAssociation of Firefighters, AFL-CIO, CLC, 745 A.2d 786, 788 (R.I. 2000), the Supreme Court found that the dismissal of two town firefighters was not arbitrable. There again, two town employees were terminated, after notice and hearing, in accordance with the Town Charter provision forbidding the town to employ convicted felons. Id. Also, in that case, the union filed grievances and a demand for arbitration, both of which were denied by the town. Id. "[A] valid employment requirement prescribed by state law cannot be negotiated and is not a proper subject for arbitration." Id. (citing Town of West Warwick v. Local 2045, Council 94, 714 A.2d 611 (R.I. 1998)). There, the employment requirement was contained in the Town Charter, which was prescribed by state law, and thus there was no leeway when it came to enforcing the employment requirement.
Applying this analysis to the present dispute, it is clear that the residency requirement at hand is a valid condition precedent to employment and, as such, the Town of Burrillville does not have any discretion with respect to its enforcement. Therefore, in the event that this condition is not satisfied, employment may be terminated. Pedro admittedly concedes that he has not and continues not to satisfy the residency requirement. Thus, Pedro cannot successfully argue that the residency requirement, which is a valid condition of employment and prescribed by state law, may be declared null and void by a committee organized under the provisions of LEOBOR.
This Court will now examine the applicability of LEOBOR as applied to the facts at hand. Pedro argues he is entitled to a hearing under LEOBOR and essentially seeks to have the same hearing committee declare the residency requirement provision of the Town Charter invalid. Under LEOBOR, a hearing committee is given the authority to "call witnesses, make findings of fact, and sustain, modify, or reverse the charges of the investigating authority." City of East Providence v. McLaughlin,593 A.2d 1345, 1348 (R.I. 1991) (citing Lynch v. King, 120 R.I. 868, 870 n. 1, 391 A.2d 117, 119 n. 1 (R.I. 1978)). A hearing in this matter is problematic because the hearing committee would essentially be asked to vacate or reverse the Town Charter provision that specifically requires employees to live within the boundaries of the Town. A hearing committee organized under LEOBOR does not have such power. The hearing committee retains it power by and through the general legislation of LEOBOR and thus cannot overturn the Charter mandate since the Charter in question is special legislation and trumps the former.
This Court finds that the powers conferred upon a hearing committee through the general legislation outlined in LEOBOR are not unfettered and must bow to the provisions of the Charter as it is special legislation. In other words, if the provisions of the Charter supersede the provisions of LEOBOR, then a hearing committee does not, in this context, actually have the power to either "modify" or "reverse the complaint or charges," namely the violation of the residency requirement. This result is predicated on the distinction between a valid employment requirement and those benefits that may flow, under LEOBOR, to police officers after they have first satisfied all conditions precedent to employment. (emphasis). In essence, Officer Pedro has not triggered any rights under LEOBOR because he has admittedly failed to satisfy the requirement of residency, which is mandatory under the Charter as special legislation. LEOBOR is designed to provide protection and guidance to police officers when their rights may be affected during the course of disciplinary proceedings. In contrast, the present case concerns a valid prerequisite to employment, as opposed to an ordinary disciplinary matter. As such, the facts of this case do not provide for an application of LEOBOR.
The Burrillville Charter is an act of special legislation whereas the LEOBOR is an act of general legislation. LEOBOR is found in Section 42 of Chapter 28.6 of the Rhode Island General Laws. This is a law of general application since it pertains equally to all aggrieved police officers in the state of Rhode Island. Conversely, Supreme Court precedent in this area of law clearly holds that the Burrillville Charter should be viewed as special legislation due to the actions of the General Assembly. SeeNapolitano, supra. If some conflict exists between the subject Charter provisions and the pertinent provisions of LEOBOR, then the inconsistent provisions must be reconciled. Conflict is evident in this situation. The conflict is revealed through an analysis of the language established in G.L. 1956 § 42-28.6-11(a), which empowers a hearing committee under LEOBOR "to sustain, modify in whole or in part, or reverse the complaint or charges of the investigating authority. . . ." On one hand, LEOBOR permits a hearing committee to dismiss ultimately charges that have been brought against an officer. In this case, however, a hearing committee organized under LEOBOR does not have any power to dismiss the charges which allege Pedro has not satisfied the residency requirement because said requirement is a condition of employment ratified in the Charter as special legislation. The end result is that any conflicting provisions of the Charter and LEOBOR will be resolved in favor of the Charter. This Court holds that the residency requirement of the Charter supersedes the general right to a hearing under LEOBOR. The residency requirement found in the Charter is a condition of employment with the town of Burrillville and must be initially satisfied before any provisions of LEOBOR may be triggered.
 CONCLUSION
The Town's petition for declaratory relief is granted. This Court declares that Officer Pedro is not entitled to a hearing, under LEOBOR, before his termination. LEOBOR does not confer any applicable rights upon Pedro in this context because this statutory framework exists as general legislation. The Burrillville Charter is special legislation which specifically contains a residency requirement as a mandatory condition precedent to employment with the Town. Accordingly, this mandatory employment requirement cannot be invalidated by the decision of a hearing committee, organized under LEOBOR, which is permitted only to vacate or reverse disciplinary charges brought against aggrieved police officers.
Counsel shall submit an appropriate order for entry.