[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is the appeal of a decision by a hearing committee ("committee") formed pursuant to the Law Enforcement Officers' Bill of Rights ("LEOBR"). Rhonda Kessler ("Kessler" or "appellant") seeks to reverse the committee's recommendation that she be demoted from Sergeant to Patrolwoman and that she be suspended without pay for six months. The City of Providence Police Department ("department" or "appellee") requests that the Court uphold the committee's decision. Jurisdiction is pursuant to G.L. 1956 § 42-28.6-12.
 Facts and Travel
On May 27, 2004, the Chief of the Providence Police Department, Colonial Dean M. Esserman, issued a complaint to Kessler, at that time a Sergeant, charging her with violating numerous department rules and regulations. The complaint against Kessler cited breaches of the following regulations:
 (1) Obedience to laws and rules (sec. 200.2)
 (2) Duty to report information (sec. 200.39)[1]
 (3) Truthfulness (sec. 200.18)
 (4) Maintaining a professional demeanor (sec. 200.13)
 (5) Conduct unbecoming an officer (sec. 306.7)
 (6) Neglect of duty (sec. 306.7)
 (7) Malfeasance, nonfeasance, or misfeasance (sec. 306.7)
 (8) Conduct tending to cause disrepute on the department (sec. 306.7)
 (9) Any act or omission contrary to good order and discipline (sec. 306.7)
 (10) Avoid bringing discredit upon themselves or the Department (sec. 200.5)
These charges were based on allegations that Kessler perjured herself at a Belanger Hearing on January 18, 1999.[2] As a result of Kessler's alleged impropriety, the department notified her that she was to be terminated, citing the aforementioned charges as authority for the punitive action. Kessler then submitted a request for a LEOBR hearing before a committee. The circumstances precipitating this dispute are as follows.
In 1997, Kessler, a 14-year veteran of the Providence Police Department, took a department-issued exam, with the understanding that those with the top ten scores on the test would receive promotions to Sergeant. Kessler finished tenth, but subsequent grievances by other officers regarding the test questions led to an arbitrator's decision to alter certain answers. This adjustment resulted in bumping Kessler's score from the tenth best to the eleventh best, thereby removing her from the pool of those receiving promotions. After several meetings among union representatives, department members, and a labor attorney hired by Kessler, the parties agreed to have her sit for the next administration of the Sergeant's exam, on October 17, 1998.
The foremost point of contention afflicting Kessler and the department pertains to a meeting between Kessler and Captain John Ryan ("Ryan") in Ryan's office days before the 1998 exam, and, more importantly, Kessler's subsequent comments about that encounter. While the parties disagree as to Ryan's intentions, the record indicates that during this meeting Ryan offered Kessler access to the source key, i.e., the answer sheet, for her upcoming exam.[3] Following the Sergeant's exam, and pertinent to the matter at bar, the appellant testified on at least four separate occasions as to the details of the exchange between herself and Ryan just prior to October 17, 1998. (Hearing Committee Decision of Feb. 22, 2005 ("Decision") at 7.)
On January 18, 1999, Kessler testified at a Belanger Hearing that Ryan did not provide her with the answers to the test. (Tr. 1/18/05 at 83) (Decision at 7.) Specifically, when asked whether it was true that she was "given the test and/or answers prior to the exam," she responded "[a]bsolutely not." (Tr. 1/18/05 at 83.) The examiner continued, asking "[d]id anyone approach you prior to the exam from the department administration in any attempt to aid you in the exam," to which she again answered resoundingly "[a]bsolutely not." Id. The appellant then augmented her answer by proclaiming that "[she] had all information that every other candidate had. . . ." Id. Thereafter, the appellant testified before a federal grand jury on November 2, 2000 concerning the same occasion. In response to an inquiry as to what happened at the meeting with Ryan, Kessler stated, under oath, that "[h]e offered me what appeared to be an answer key, a review sheet." (Tr. 11/2/00 at 14.) Likewise, on June 26, 2002, the following question and answer exchange took place before a state grand jury:
 "Question: Is it fair to say what Captain Ryan was doing here was offering you a way to cheat on this test?
 Answer: Absolutely.
 * * * * * * * *
 Question: He's offering you something to help you on the test?
 Answer: Yes." (Tr. 6/26/02 at 54-55.)
Finally, on July 1, 2002 at a Garrity Hearing,[4] Kessler testified that, at the aforementioned meeting, Ryan "held up a document. He had it in his hand. . . . The document appeared to be — it looked like the review key." (Tr. 7/1/02 at 18.)
Following Kessler's appeal of these charges, the hearing committee convened on January 18, 2005, and over the next six days it reviewed this evidence, as well as other testimony offered on behalf of both parties. On January 25, 2005, it issued a written decision itemizing the charges, the specifications, and the findings of fact for each charge. On each of the charges, the committee voted two-to-one against the appellant, and it recommended a demotion to the rank of Patrolwoman, as well as a six-month suspension from duty without pay.[5]
Kessler filed the instant, timely appeal. As grounds, she avers that the committee's decision was contrary to existing law, that the department failed to show the regulations which formed the basis of the charges against her existed at the time the alleged violations took place, and that the penalty imposed was both arbitrary and capricious. Conversely, the appellee maintains that there exists "substantial, clear and abundant" evidence in the record to support the committee's decision. (Opposition at 4.)
 Standard of Review
"The Law Enforcement Officers' Bill of Rights, enacted in 1976, is the exclusive remedy for permanently appointed law-enforcement officers who are under investigation by a law-enforcement agency for any reason that could lead to disciplinary action, demotion, or dismissal." City of EastProvidence v. McLaughlin, 593 A.2d 1345, 1348 (R.I. 1991) (citing Lynchv. King, 120 R.I. 868, 870 n. 1, 391 A.2d 117, 119 n. 1 (1978)); see,e.g., City of Pawtucket, Police Div. v. Ricci, 692 A.2d 678, 682 (R.I. 1997); In Re Sabetta, 661 A.2d 80, 83 (R.I. 1995). Pursuant to the act, any law enforcement officer facing departmental charges that may result in demotion, transfer, dismissal, loss of pay, reassignment, or the like, is entitled to a hearing on the issues before a committee comprised of three active law enforcement officers. G.L. 1956 §§ 42-28.6-1 and42-28.6-4. This hearing committee has great discretion to sustain, modify, or reverse the charges brought forth by the investigating authority. Sec. 42-28.6-11; see also Culhane v. Denisewich, 689 A.2d 1062,1064-65 (R.I. 1997) (citing State Dep't of Envtl. Mgmt. v. Dutra, 1211 R.I. 614, 401 A.2d 1288 (1978) (citations omitted)).
Officers may appeal adverse decisions by the committee to the Superior Court. Sec. 422-8.6-12. For purposes of the appeal, the hearing committee is "deemed an administrative agency and its final decision shall be deemed a final order in a contested case within the meaning of §§ 42-35-15
and 42-35-15.1." Id. Accordingly, in reviewing LEOBR committee decisions, this Court must apply the standard of review as set forth in § 42-35-15(g):
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision pursuant to § 42-35-15, the Court may not substitute its judgment for that of the agency with respect to credibility of witnesses or the weight of evidence concerning questions of fact. Ctr. for Behavioral Health, R.I., Inc. v. Barros, 710 A.2d 680,684 (R.I. 1998). Therefore, the Court is confined to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston AmbulatorySurgical Assocs., Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000) (quotingBarrington Sch. Comm. v. R.I. State Labor Relations Bd., 608 A.2d 1126,1138 (R.I. 1992)); see also Newport Shipyard v. R.I. Comm'n for HumanRights, 44 A.2d 893, 896-97 (R.I. 1984). Competent or substantial evidence is that which a reasonable mind might accept to support a conclusion. Newport Shipyard, 44 A.2d at 897 (quoting Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). The Court "may reverse [the] findings of the administrative agency only in instances where the conclusions and the findings of fact are totally devoid of competent evidentiary support in the record, or from the reasonable inferences that might be drawn from such evidence." Bunch v.Bd. of Review, 690 A.2d 335, 337 (R.I. 1997) (citations omitted). In this respect, the Court's review is both limited and highly deferential.Culhane, 689 A.2d at 1064. However, the Court reviews questions of lawde novo. Narragansett Wire Co. v. Norberg, 118 R.I. 596, 376 A.2d 1, 16
(1977).
 The Appellant's Arguments
Kessler asks this Court to reverse the committee's decision in this instance on three grounds. First, she maintains that the decision was contrary to the prevailing law. Second, she claims that the department did not follow lawful procedure by failing to prove that the charges against her were in effect at the time of the alleged violation. And finally, the appellant advances the argument that the committee's decision was arbitrary and capricious, in violation of § 42-351-5(g). The Court will address each argument in turn.
 The Decision Was Contrary to Law
The appellant argues there exists no evidence in the record to support the committee's factual determination that Kessler lied under oath and, accordingly, nothing to sustain the conclusion that she committed perjury pursuant to G.L. 1956 § 11-33-1. Specifically, it is the appellant's contention that the evidence before the committee supports the premise that the statements made under oath at the Belanger Hearing on January 18, 1999 were truthful, and not false swearing. In support of this claim, Kessler points the Court to her testimony at the LOEBR hearing that she did not trust Ryan at the time of their encounter. (Tr. 1/21/05 at 33.) In fact, it was her belief that, by offering the answers to the test, "Jack Ryan was trying to set me up." Id. Consequently, when the appellant was asked at the Belanger Hearing whether "anyone approach[ed] [her] prior to the exam from the department administration in any attempt to aid [her] in the exam" (emphasis added), her response of "[a]bsolutely not" was entirely truthful. On the other hand, the department maintains that the record contains ample evidence to sustain the committee's determination that Kessler voluntarily offered statements she knew to be false.
Section 42-28.6-11(b) of the Rhode Island General Laws requires that "[a]ny decision, order, or action taken as a result of the hearing shall be in writing and shall be accompanied by findings of fact," which "shall consist of a concise statement upon each issue in the case." It is mandatory that the hearing committee submit written conclusions in the form of findings of fact. Dionne v. Jalette, 641 A.2d 744, 745 (R.I. 1994). This Court must determine whether some legally competent evidence supports those findings of fact. City of Pawtucket, Police Div. v.Ricci, 692 A.2d at 682. The LEOBR hearing committee is obligated to delineate in its decision how evidentiary conflicts were resolved or advise the Court of the basic findings on which the ultimate findings rested. Dionne, 641 A.2d at 745. The committee must render "an ample decisional demonstration of the grounds upon which an ultimate conclusion is predicated." Id (quoting Hooper v. Goldstein, 104 R.I. 32, 44,241 A.2d 809, 815 (1968)).
In the case at bar, the LEOBR hearing convened to settle accusations against Kessler that she violated ten — since reduced to nine — department rules and regulations. In its written decision, the committee itemizes the charges against the appellant, setting forth the specific charge and specifications, as well as detailed findings of fact as to each, as required by § 422-8.6-11(b). The findings of fact resolve disputed testimony concerning the details of the meeting between Kessler and Ryan in the days preceding the October 17, 1998 Sergeant's exam. Furthermore, the findings outline for the Court the specific, and substantial, evidence the committee relied on in sustaining the charges against Kessler and imposing the six-month unpaid suspension and demotion.
In reaching its conclusion, the committee took into account the testimony of a number of individuals with significant connections to these circumstances. See City of East Providence v. McLaughlin,593 A.2d at 1348 (citations omitted) (noting the committee's role as factfinder necessitates calling witnesses and weighing credibility). Such testimony included that of Captain Ryan's secretary, Sandra Manning, who testified that Kessler animatedly exclaimed that she had been offered the answers to the test upon leaving Ryan's office that day. (Decision at 4-5.) In addition, Sergeant Kevin Ziegelmayer, a co-worker of Kessler's at the time, testified that, prior to the 1998 exam, the appellant said to Ziegelmayer, "I don't have to take [the test]. I'm all set." Id. at 5. Moreover, Sergeant Donna Searles (Ret.), then in charge of administering all promotional exams for the police department, testified before the committee that Ryan had requested a copy of the source material which comprised the answers for the 1998 exam, and, when his request was rejected, he then contacted the test manufacturer to obtain that material. Id. at 6. Finally, the committee heard testimony from Major Dennis Simoneau (Ret.), who stated, under oath, that he had spoken with Kessler prior to October 17, 1998, and that she related to him that she had not studied for the test, and was not planning on taking it at all. Id. at 6-7. Major Simoneau also pointed out that he had previously obtained time slips from Youth Services, the department in which Kessler then worked, and discovered that she had taken sick leave only two days leading up to the Sergeant's exam — an unusually small amount of time to study for what is typically a rigorous departmental promotional examination. Id. at 7. It is well settled that this Court, in reviewing cases brought under the Administrative Procedures Act, will refrain from assessing testimonial credibility, and will instead defer to the agency's estimations. See Foster-Glocester Reg'l Sch. Comm. v. Bd. of Review,854 A.2d 1008, 1012 (R.I. 2004) (quoting Tierney v. Dep't of HumanServs., 793 A.2d 210, 213 (R.I. 2002) (citations omitted)).
In addition to this testimonial evidence, the committee also relied on circumstantial evidence it deducted from the proceedings. Kessler testified to the committee that she did not trust Ryan when he purportedly offered the answers to the test. (Tr. 1/21/05 at 33-34) (Decision at 7.) It was the appellant's testimony that she was, in fact, so skeptical of his intentions that she suspected his actions were a ploy to frame her. (Tr. 1/21/05 at 33.) Given these apprehensions, Kessler stated that she began to tape record her meetings with Ryan, yet when the committee asked her to provide copies of these recordings, she responded that she had since lost the tapes. (Decision at 8.) Conversely, another witness provided portions of transcripts of these recordings, taken off of Kessler's computer, which tended to show that Ryan was trying to help her with the Sergeant's exam.[6] As such, the record amply supports the committee's finding that Ryan was trying to help Kessler when he offered her the source key, and not, as the appellant argues, to set her up. For all the aforementioned reasons, the Court is satisfied that a foundation of substantial and competent evidence reinforces the hearing committee's conclusion that Kessler offered untruthful answers at the Belanger Hearing, and thusly violated § 11-33-1.
The appellant also argues that the relevant statute of limitations precludes enforcement of these charges. Section 42-28.6-4(a) of the Rhode Island General Laws, provides, in pertinent part, as follows:
 "Disciplinary action for violation(s) of departmental rules and/or regulations shall not be instituted against a law enforcement officer under this chapter more than three (3) years after such incident, except where such incident involves a potential criminal offense, in which case disciplinary action under this chapter may be instituted at any time within the statutory period of limitations for such offense."
She claims that because "[t]he Hearing Board found her response [at the Belanger Hearing on January 18, 1999] to be `her opinion'," that precludes any charges of perjury in this instance.[7] (Brief at 6.) As a consequence, Kessler maintains, the only proper grounds for the charges brought against her would be that she was untruthful in violation of the department rules and regulations. Id. This distinction, per the appellant's argument, is critical because the statute of limitations for disciplinary action for violating the regulations is three years, whereas the time period would be enlarged to ten years under Rhode Island's perjury statute.
The appellant's argument, however, is misplaced. It is inaccurate to proclaim that the committee in this instance found that Kessler testified truthfully as to her opinion at the Belanger Hearing. Rather, the committee made the following findings of fact: "Based upon the evidence . . . the answer offered at the Belanger Hearing was not truthful"; "the majority of the members of this Hearing Board believe that Rhonda Kessler did in fact refrain from telling the truth at the January 18, 1999 Belanger Hearing"; and "the fact is she did not answer the question truthfully." (Decision at 7-8.) Accordingly, the department originally charged that Kessler committed perjury in violation of department rules and regulations. The committee, pursuant to its statutory authority, then made a finding of fact based on the evidence before it that Kessler indeed committed perjury at the Belanger Hearing in January of 1999. SeeDionne v. Jalette, 641 A.2d at 744 (holding that the power to act as a factfinder is vested exclusively in the hearing committee). Therefore, in addition to violating the department regulations, the appellant's actions leave her potentially criminally liable in this instance pursuant to §11-33-1. See supra note 6. Section 42-28.6-4(a) clearly provides that where the affair in question concerns a "potential criminal offense . . . disciplinary action under this chapter may be instituted at any time within the statutory period of limitations for such offense." Perjury is a criminal offense that Kessler remains potentially liable for, and the statute of limitations for perjury is ten years.[8] Accordingly, the Court is satisfied that the committee's decision did not constitute an error of law in violation of statutory provisions.
 The Charges Were Not in Effect at the Time of the Alleged Violation
Kessler alleges that the department failed to prove certain of the regulations which form the basis of the charges against her were actually in effect when she allegedly committed the violations. As statutory authority for this argument, the appellant points to § 42-28.6-11(c), which provides, in pertinent part, that "it shall be the burden of the charging law enforcement agency to prove, by a fair preponderance of the evidence, that the law enforcement officer is guilty of the offense(s) or violation(s) of which he or she is accused." As such, Kessler contends, because five of the nine charges against her are founded on regulations that were obsolete at the time of the alleged violations, the charges cannot be sustained.[9] In support of this claim, the appellant submits an Affidavit from Lieutenant Kenneth M. Cohen, the Commanding Officer of the Human Resources Bureau of the department from 1999 to 2003, who states that the five regulations in question were never issued to officers in Kessler's position. (Affidavit at 1.)
The appellee counters that reliance on § 42-28.6-11 is misplaced in this context. Rather, the department urges that the law is altogether silent as to whether the accusing authority has any obligation to prove the existence of the regulations upon which it moves to charge the offender. (Opposition at 12.) To bolster its argument, the department notes for the Court that it indeed complied with its statutory procedural duties relative to conducting its investigation, providing appropriate notice, and supplying sufficient evidence to the hearing committee pursuant to §§ 422-8.6-2, 42-28.6-4, 42-28.6-5, and 42-28.6-6.
While the Court agrees with the appellant that one in her position cannot be charged with violations of rules or regulations that do not exist, her argument in this context fails to take into account the four charges brought against her pursuant to section 200 of the department rules and regulations. In this vein, the committee's findings remain sufficient to sustain the charges against Kessler that she failed to obey state laws and departmental policies in violation of section 200.2; that she was untruthful in contravention of section 200.18; that she failed to maintain a professional demeanor as is required by section 200.13; and that she indeed brought discredit upon herself and the department as is prohibited by section 200.5. The record evidences that charges one, three, four, and ten, by themselves sustain the ultimate punitive recommendation issued by the committee. See Culhane v. Denisewich,689 A.2d at 104-65 (limiting the Court's inquiry to whether the punishment ordered was within the authority of the committee). Accordingly, the hearing committee operated in this instance pursuant to lawful procedure, and substantial rights of the appellant were not hereby prejudiced.
 Whether the Penalty Was Arbitrary and Capricious
The third and final prong of the appellant's appeal is that the committee's decision was arbitrary and capricious and its imposition would result in a "miscarriage of justice." (Brief at 89-.) As support for her argument, Kessler points to her co-workers' testimony painting her as a dedicated, honest, and trustworthy officer. Id. at 8. On the other hand, the appellee maintains that the committee's decision was justified in light of the evidence before it. (Opposition at 131-7.) If anything, the department proffers, the committee erred on the side of leniency in allotting a recommendation less than termination. Id. at 16-17.
Section 42-35-15(g) of the Rhode Island General Laws sets forth the reviewability parameters for Courts faced with appeals from agency decisions. The Court may affirm, remand, or reverse should it find that the agency's decision was, inter alia, "[a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec. 42-351-5(g)(6). The Court will uphold administrative decisions "as long as the administrative interpreters have acted within their authority to make such decisions and their decisions were rational, logical, and supported by ample evidence. Goncalves v. NMUPension Trust, 818 A.2d 678, 682-83 (R.I. 2003) (citing Doyle v. PaulRevere Life Ins. Co., 144 F.3d 181 (1st Cir. 1998)). Accordingly, the decision will be neither arbitrary nor capricious "when it is possible to offer a reasoned explanation, based on evidence, for a particular outcome." Goncalves, 818 A.2d at 683 (quoting Coleman v. Metro. LifeIns. Co., 919 F. Supp. 573, 580 (D.R.I. 1996); see also Guy v. Se.Iron Workers' Welfare Fund, 877 F.2d 37 (11th Cir. 1989) (noting that a reviewing court's inquiry is limited to determining whether the decision before it was rational and made in good faith).
In the instant case, the hearing committee found that Kessler failed to be truthful at the Belanger Hearing on January 18, 1999, and, as a result of this indiscretion, committed perjury on that day in violation of §11-33-1. In its written decision, the committee delineated the voluminous evidence it scrutinized prior to making its final evaluation. That evidentiary support includes the actual transcripts of the Belanger Hearing, Kessler's federal grand jury testimony on November 2, 2000, and the Garrity interview on July 1, 2002. The committee also looked at the documentation pertaining to the Providence Police Department promotional examinations at issue before the Court.[10] Additionally, the committee considered the testimony of a number of witnesses (discussed supra) each contributing instructive testimony that ultimately led to the committee's final resolution.
From this evidence, a majority of the hearing committee inferred that Rhonda Kessler testified falsely in violation of department rules and regulations. Kessler, on the other hand, contends that "[she] is an honest, forthright person who had an honest belief that she was being set up by then Capt. Ryan. . . ." (Brief at 8.) This Court, however, need not assess whether the committee's inferences are correct. Rather, this Court must ascertain whether competent evidence exists sufficient to sustain the committee's inferences. City of Pawtucket, Police Div. v. Ricci,692 A.2d at 684 (citations omitted). The record is replete with competent evidence in support of the hearing committee's conclusions.
 CONCLUSION
After reviewing the entire record, this Court holds that the hearing committee's findings and decision are not clearly erroneous, but are supported by reliable, probative, and substantial evidence. The decision of the hearing committee was within its authority, not contrary to law, and neither arbitrary, capricious, nor representative of an abuse of discretion. Accordingly, the hearing committee's decision to suspend the appellant without pay for six months and demote her from Sergeant to Patrolwoman upon her return is affirmed. Substantial rights of the appellant have not been prejudiced. Counsel shall submit an appropriate order for entry, consistent with this decision.
[1] This charge was previously dismissed.
[2] Unions utilize Belanger Hearings as a fact-finding device to aid in resolving disputes between or among union members. Witnesses provide sworn testimony at the hearings. See generally Belanger v. Matteson,115 R.I. 332, 346 A.2d 124 (1975); see also Tr. 1/18/05 at 78 (discussed further infra).
[3] Kessler maintains that Ryan's actions represented an attempt to frame her. See Memorandum in Support of the Appeal of Rhonda Kessler from an Adverse Decsion [sic] by a Hearing Panel Constituted Pursuant to the Law Enforcement Officers [sic] Bill of Rights ("Brief") at 5. Cf.
Memorandum in Opposition to Plaintiff's Memorandum in Support of the Appeal of Rhonda Kessler from an Adverse Decision by a Hearing Panel Constituted Pursuant to the Law Enforcement Officers' Bill of Rights ("Opposition") at 10-11 (suggesting that Kessler understood Ryan was, in fact, helping her with the test) (discussed at length infra).
[4] See generally Garrity v. New Jersey, 385 U.S. 493 (1967) (allowing police departments to elicit certain testimony from officers without threat of potential criminal liability).
[5] The LEOBR hearing committee determined a suspension and demotion as the more appropriate course in this instance, despite the department's initial recommendation that Kessler be terminated entirely for her transgressions. (Decision at 59.) G.L. 1956 § 42-28.6-11(a) provides, in pertinent part, that "[t]he hearing committee shall be empowered to sustain, modify in whole or in part, or reverse the complaint or charges of the investigating authority. . . ."
[6] The transcripts revealed that Ryan had told Kessler to buy some time by signing up for the October 17, 1998 exam; that he would help her by "getting the Chief to back off"; and encouraging her to have her attorney write a letter and file a motion to quash the test. (Decision at 8.)
[7] G.L. § 11-33-1 provides that one shall be deemed guilty of perjury, if, under oath or affirmation, he or she "makes any false material declaration or makes or uses any other information . . . knowing it contains any false material declaration. . . ." Sec. 11-33-1(a). Accordingly, the appellant claims that the committee failed to find factual support for the contention that she "knowingly" made a false statement at the Belanger Hearing.
[8] G.L. 1956 §§ 11-33-1(b)(2) and 12-12-17(b) (setting forth the statute of limitations for a perjury charge at ten years).
[9] The appellant admits that charges one, three, four and ten were in effect at the time of her alleged transgressions (see list of charges,supra). She objects, however, to charges five through nine, all of which are based on violations of regulations promulgated in section 306.7 of Part III of the Providence Police Department Manual, which were "antiquated and no longer the law" in or around January 1999. See Reply Memorandum in Support of the Appeal of Rhonda Kessler From an Adverse Decision by a Hearing Panel Constituted Pursuant to the Law Enforcement Officers' Bill of Rights ("Reply Brief") at 1.
[10] Of note is the fact that Kessler finished first overall on the Sergeant's exam she took in November of 1998. This result, combined with the fact that she had never received so high a mark on a department-issued exam, caught the eye of the hearing committee in light of the allegations that she had been given the answer key days before the test.