OPINION
Justice GOLDBERG, for the Court.
This case came before the Supreme Court pursuant to a writ of certiorari filed *506 by the petitioner, the City of Pawtucket (city or petitioner), seeking review of a Superior Court judgment affirming a decision of a hearing committee that was convened to adjudicate disciplinary charges against the respondent, Pawtucket police officer Nichalas Laprade (Laprade or respondent). Before this Court, the petitioner argues (1) that the hearing committee erred in denying the city’s request to reschedule the date of its first hearing and that the Superior Court justice erred by affirming the hearing committee’s decision; (2) that the Presiding Justice erred by denying the city’s request to convene its first hearing after the originally scheduled date and that the Superior Court justice erred in failing to review this ruling; and (3) that the hearing committee erred in failing to take judicial notice of the respondent’s criminal conviction and that the Superior Court justice erred in affirming this decision. For the reasons set forth in this opinion, we quash the judgment of the Superior Court, vacate the decision of the hearing committee, and remand the case to the Superior Court.
Facts and Travel
On February 18, 2011, Pawtucket police officer Nichalas Laprade was convicted of disorderly conduct by indecent exposure[1] in Sixth Division District Court, a criminal conviction stemming from an incident that occurred on November 9, 2010, during which two women observed the off-duty Laprade masturbating and exposing himself while driving his personal vehicle. On May 3, 2011, the City of Pawtucket and the Department’s Office of Professional Standards/Internal Affairs charged La-prade in an eighteen-count complaint, alleging violations of Department rules and regulations stemming from his indecent exposure conviction as well as other incidents of alleged misconduct, including sleeping while on duty.[2]
After being notified of the disciplinary charges against him — as well as the city’s recommendation that his employment be terminated — Laprade timely filed a written request for a hearing in accordance with the Law Enforcement Officers’ Bill of Rights Act (LEOBOR), as set forth in G.L. 1956 chapter 28.6 of title 42. In accordance with § 42-28.6-4, a three-person hearing committee was then selected; it was composed of Patrolman Richard Ramirez (Ramirez) — a Providence police officer selected by Laprade — and Major Bruce Moreau (Moreau) from the Paw-tucket Police Department, who was chosen by the city. On June 23, 2011, these two committee members selected Sergeant Arthur Lee (Lee) of the Providence Police Department to serve as the third committee member and as the chairman of the committee. Lee proceeded to contact the parties, who agreed to hold the first sched *507 uled hearing at 11:00 a.m. on Wednesday, July 20, 2011.
On July 11, 2011 — nine days before the scheduled hearing and one day after the statutory deadline set forth in § 42-28.6-5(c) — the city provided Laprade with a list of witnesses and evidence that the city planned to present at the hearing.[3] That same day, Moreau returned from vacation and discovered that he had a conflict with the July 20 hearing date. Mor-eau also learned that a medical issue had arisen with a family member of the city’s legal counsel that also conflicted with the hearing date. Finally, Moreau was notified that the city’s delivery of the witness and evidence list would not comply with LEOBOR unless the hearing date was continued. Based on these circumstances, Moreau contacted the committee chair and requested that the hearing date be continued “a day or two” to avoid any conflicts. Moreau further stated that, if the hearing committee could not meet on one of those days, Lee should “consider drafting a letter to the [Presiding Justice] requesting an extension of time.” Lee, however, responded that legal counsel for Laprade had objected to changing the hearing date, but had offered to hold the meeting on July 20 anytime between 6 a.m. and 9 p.m. As a result, Lee confirmed that, while the timing was subject to change, the hearing would proceed on July 20 as originally scheduled.
On July 14, 2011, Moreau wrote to the Presiding Justice of the Superior Court, explaining that, upon opposing counsel’s objection, the committee chair had denied the city’s request for a continuance; he then asked that the statutory thirty-day timeframe for holding the first LEOBOR hearing be extended pursuant to § 42-28.6-5(b).[4] Upon receiving a copy of this letter, counsel for Laprade telephoned the Presiding Justice and requested a hearing on the matter. On July 18, 2011, a hearing took place before the Presiding Justice— although no complaint or miscellaneous petition was filed in Superior Court — at which counsel for the city submitted a memorandum of law in support of the requested continuance.[5] Although it was *508 counsel for Laprade who requested the hearing, he nonetheless argued that Mor-eau’s letter to the Presiding Justice was inappropriate, stating that “the Court at this point in the [LEOBOR] proceedings really doesn’t have any jurisdiction to hear anything that is before it.” Counsel explained that the letter had not come from the committee as whole, but rather from one member. Counsel maintained that, when faced with Moreau’s request for a continuance, the committee chair had adhered to the July 20 hearing date — which was within the thirty-day timeframe allowed under § 42-28.6-5. Therefore, counsel for Laprade argued that the Superior Court was without jurisdiction to decide the issue, and maintained that the hearing should proceed on July 20 as planned subject only to subsequent review by the Superior Court in accordance with the appeal process specified in § 42-28.6-12.
Conversely, the city maintained that, pursuant to § 42-28.6-5(b), the Presiding Justice had jurisdiction to extend the time for the committee to hold its first hearing. Counsel for the city argued that the hearing date should be continued because a family medical issue had arisen that would be addressed on that date and also because Moreau had a commitment which conflicted with the July 20 hearing. The city also noted that a violation of the statutory requirements for presenting the witness and evidence list — mandating disclosure ten days prior to the hearing — had not yet arisen, and would occur only if the hearing proceeded as scheduled; therefore, he argued, the hearing should be continued to avoid potential procedural error. Faced with this argument, counsel for Laprade replied that he would agree to a continuance, as long as the hearing was treated for all purposes as if it was in fact being held on the original date of July 20.
On July 18, 2011, the Presiding Justice issued a written order stating that the city’s failure to present the witness and evidence list ten days prior to the scheduled hearing date did not present good cause to extend the hearing date under § 42-28.6-5(b). The order further indicated that the Presiding Justice was, however, “sympathetic to Counsel’s family medical exigency,” and ordered the parties “to agree upon another mutually convenient date for a hearing,” specifying that “the date of the hearing will still be considered as July 20, 2011 for timing purposes.”
The parties subsequently agreed to hold the first hearing on Friday, July 22, 2011. On this date, the city again requested that the committee reconsider a continuance of the July 20 hearing date; however, this request was denied. The hearing committee then took judicial notice of the Presiding Justice’s July 18, 2011 order, specifying that it would not be marked as evidence. Significantly, the committee refused to accept any evidence that day, despite repeated and vigorous attempts by Laprade’s counsel to introduce documents and place evidence on the record. Nonetheless, the chairman was steadfast in his refusal to take any evidence on July 22, 2011. Instead, the proceeding concluded after the committee decided to petition the Presiding Justice to appoint legal counsel to advise the committee — which was subsequently granted — and scheduled the next meeting for September 8, 2011.
At the September 8 hearing, the city submitted its complaint against Laprade into evidence, presented an opening state *509 ment, and attempted to call its first witness. Counsel for Laprade[6] objected to the witness being called, claiming that, pursuant to § 42-28.6-5(e), the city was precluded from presenting witnesses or evidence because it had failed to provide the evidence and witness list to Laprade at least ten days in advance of July 20. In response, the city argued that the disclosure of the witness and evidence lists were in fact timely because the July 22 proceeding — which, in accordance with the Presiding Justice’s July 18 order, was treated as having taken place on July 20 — did not constitute a hearing under LEOBOR because no evidence was taken at the proceeding.[7] Counsel for Laprade countered that the July 22 proceeding was a hearing under LEOBOR, and, in the alternative, if the committee found that it was not a hearing, the committee would need to treat the September 8 hearing as having occurred on July 20 in order to comply with the Presiding Justice’s order, which explicitly stated that “the date of the hearing will still be considered as July 20, 2011 for timing purposes.” (Emphasis added.) After the parties’ arguments, the committee reserved decision on the issue and adjourned.
At the next hearing, held on September 13, 2011, the parties were informed that the committee had decided that the proceeding held on July 22 was in fact a hearing and that it would be treated as if it had occurred on July 20 based on the July 18 order of the Presiding Justice. As such, the parties were told that the committee had decided that Laprade’s motion to prohibit the city from calling witnesses or introducing evidence was granted. The city responded that, although the committee’s ruling made it impossible to prove a number of charges, the city was still able to proceed on those charges in the complaint pertaining to Laprade’s conviction for indecent exposure. To do so, the city requested that — as a substitute for introducing into evidence the document reflecting the conviction — the committee take judicial notice of Laprade’s conviction in accordance with § 42-28.6-10.[8] The city — citing Lynch v. King, 120 R.I. 868, 878, 391 A.2d 117, 123 (1978)— also noted that, despite its own inability to introduce witnesses and evidence, “the Legislature has endowed this Committee with very broad powers to investigate allegations of police misconduct,” and “did not intend the Committee to be bound in any way by the recommendation of a charging authority.” Accordingly, the city urged the committee to subpoena Laprade — and other witnesses — and conduct an independent examination of those witnesses.
In response, counsel for Laprade argued that the hearing committee could not — on its own initiative and in the absence of the city’s evidence and witness list — subpoena witnesses and, in essence, transform itself into a prosecutorial body. Moreover, La-prade’s counsel argued that, in order for the committee to take judicial notice of Laprade’s conviction, the city would need to present documentation — presumably, *510 the record of conviction from the District Court — which it was barred from doing because of the committee’s ruling precluding the city from presenting evidence. Faced with these arguments, the committee reserved decision and requested that the parties provide further briefing on the issues raised.[9]
At the next hearing, held on November 18, 2011, the parties were informed that, the committee had decided, by a two-to-one vote, to reject the city’s request to take judicial notice of Laprade’s conviction for indecent exposure based on the advice of appointed legal counsel. The committee also denied the city’s request to subpoena Laprade to testify, as well as the city’s request that the hearing committee exercise its independent power to subpoena and examine witnesses. The committee also denied the city’s request to call and question Laprade as an adverse party despite the fact that Laprade was not listed on the city’s witness and evidence disclosure list.
The committee issued a written decision on December 14, 2011, which recounted the travel and rulings of the LEOBOR proceedings, and detailed the remaining charges against Laprade. This was followed by a “Findings and Conclusions” section which stated that, upon a two-to-one vote, the committee decided that due to the procedural error under § 42-28.6-5(c), the city was unable to present any witnesses or submit any documentary evidence to the committee, and was therefore unable to sustain its burden of proving the allegations. Chairman Lee noted that he “would have been inclined” to take judicial notice of Laprade’s conviction if the committee’s legal counsel had so advised. The decision concluded with a dissent issued by Moreau, who stated that the majority erred by refusing to take judicial notice of Laprade’s conviction based on the requirement that the city — the party that was precluded from introducing evidence — submit documentation of that conviction.
On December 21, 2011, the city timely appealed the committee’s decision to the Superior Court under the Administrative Procedures Act (APA), G.L.1956 § 42-35-15,[10] claiming that the committee’s decision was affected by error of law and abuse of discretion. Specifically, the city argued that the committee abused its discretion by refusing to continue the initial July 20, 2011 hearing date. The city also argued that, pursuant to the July 18 order, the Presiding Justice erred by ordering the parties to agree on another date, yet to treat the proceeding as if it had occurred on July 20. Finally, the city argued that the committee’s refusal to take judicial notice of Laprade’s conviction was based on the erroneous advice of appointed counsel and constituted an abuse of discretion.
On October 17, 2012, a justice of the Superior Court issued a written decision finding that the committee’s denial of the city’s request for a continuance of the July 20 hearing date “was neither in excess of statutory authority nor an abuse of discretion.” The Superior Court justice proceeded to address the specific provisions of LEOBOR that allow the Presiding Jus *511 tice to act at various points in the proceedings; notably, none of the provisions discussed by the Superior Court justice relates to the precise issue before this Court — a requested continuance during the initial thirty-day time period. Nonetheless, she determined that the aforementioned provisions “demonstrate a legislative intent to streamline appealable questions of procedure during the adjudicative process so as to avoid prolonged and costly appeals on questions of technicality.” The Superior Court justice therefore determined that, because the Presiding Justice “has the statutory authority to grant the [cjommittee relief from certain obligations with respect to deadlines, as well as to order it to take certain actions,” the July 18 order of the Presiding Justice was not appealable under the APA, and further noted that, as an interlocutory order, it was not subject to review by another Superior Court justice under the law of the case doctrine.
On the issue of judicial notice, the Superior Court justice stated that under LEO-BOR, the committee is vested with the discretion to take judicial notice, and noted that judicial notice of a prior conviction may be taken “despite a party’s failing to formally introduce evidence of the conviction via a certified copy.” However, she did not indicate how this could be accomplished when the party was precluded from introducing any evidence. Nonetheless, she determined that the committee’s refusal to take judicial notice of Laprade’s conviction “was reasonable and did not amount to an abuse of discretion” based on the circumstances of the LEOBOR proceedings, and noted that, furthermore, there was “no manifest error of law in the written decision of the [cjommittee.” The Superior Court justice denied the city’s appeal, and a final judgment entered on October 22, 2012. The city filed a petition for certiorari on November 9, 2012, which was granted by this Court on January 10, 2013.
Standard of Review
As an initial matter, we are confronted with a discrepancy between the standards of review, as advocated by each party, that apply to the issues presented in this case. The petitioner argues that, pursuant to § 42-28.6-12, which governs appeals of decisions in LEOBOR proceedings, the hearing committee is deemed an administrative agency and this Court’s review is therefore governed by the APA. Alternatively, citing to City of Pawtucket, Police Division v. Ricci, 692 A.2d 678, 682 (R.I.1997), respondent argues that in LEOBOR cases, “this Court’s review is limited to an examination of the record to determine whether there is some competent evidence to support the committee’s findings.” Based on these apparent inconsistencies, we deem it necessary to resolve this issue.
Enacted in 1976, LEOBOR “is the exclusive remedy for permanently appointed law-enforcement officers who are under investigation by a law-enforcement agency for any reason that could lead to disciplinary action, demotion, or dismissal.” In re Simoneau, 652 A.2d 457, 460 (R.I.1995) (citing Lynch, 120 R.I. at 870 n. 1, 391 A.2d at 119 n. 1); § 42-28.6-15. This Court has declared that LEOBOR “is remedial in nature,” and “was enacted to protect police officers from infringements of their rights in the course of investigations into their alleged improper conduct.” Ims v. Town of Portsmouth, 32 A.3d 914, 925 (R.I.2011) (quoting In re Denisewich, 643 A.2d 1194, 1196 (R.I.1994)). Thus, although a LEOBOR proceeding is an adjudicatory mechanism, it “is designed to protect the rights of the accused officer who, according to the statute, is [designated as] ‘the aggrieved law enforcement officer.’ ” Id. (quoting § 42-28.6-1(2)(i)).
*512 In accordance with § 42-28.6-4, a police officer who is the subject of a departmental investigation or a disciplinary proceeding is entitled to a hearing before a hearing committee that is convened and authorized to consider the complaint. International Brotherhood of Police Officers, Local 569 v. City of East Providence, 989 A.2d 106, 109 (R.I.2010). When convened in accordance with the provisions of LEOBOR, a hearing committee is vested with “broad powers to investigate allegations of police misconduct, hold hearings, and issue decisions that affect the individual rights of permanently appointed law enforcement officers.” In re Denisewich, 643 A.2d at 1197 (citing Lynch, 120 R.I. at 878, 391 A.2d at 123). However, the statutory scheme “does not give the hearing committee the power summarily to dismiss charges for procedural violations of the Law Enforcement Officers’ Bill of Rights.” In re Sabetta, 661 A.2d 80, 83 (R.I.1995).
Prior to 1980, § 42-28.6-12 provided that a police officer who sought to appeal from a decision rendered by a LEOBOR hearing committee could do so in accordance with G.L.1956 § 45-20-1.1, which provided that any police officer (and not the charging law enforcement agency) who was aggrieved by a final decision of the hearing committee could appeal the dedsion to the Superior Court for a trial de novo on the issues presented. However, the appeal process outlined in § 42-28.6-12 and § 45-20-1.1 did not provide an officer or a charging law enforcement agency with an avenue to appellate review before this Court. In Kurbiec v. Bastien, 120 R.I. 111, 113, 385 A.2d 667, 668 (1978) we held that, under what is now article 10, section 2 of the Rhode Island Constitution,[11] this Court could review an appeal of a Superior Court decision in a LEOBOR case by “exercising its final revisory and appellate jurisdiction pursuant to its powers to issue prerogative writs, such as certiorari.” In 1980, the Legislature subsequently amended § 42-28.6-12 to provide that, if a city or town sought review of a hearing committee’s final decision, it could petition this Court by writ of certio-rari for relief “on the grounds that said decision was arbitrary or capricious or characterized by abuse of discretion or affected by error of law.”[12] P.L. 1980, ch. 272, § 1.
In 1995, however, the Legislature dramatically revised the LEOBOR appellate process outlined in § 42-28.6-12, declaring that “[ajppeals from all decisions rendered by the hearing committee shall be to the superior court in accordance with sections 42-35-15 and 42-35-15.1” of the APA.[13] *513 P.L. 1995, ch. 19, § 1. Moreover, the 1995 amendment specified that, “[f]or purposes of this section, the hearing committee shall be deemed an administrative agency and its final decision shall be deemed a final order in a contested case within the meaning of sections 42-35-15 and 42-35-15.1” P.L. 1995, ch. 19, § 1.
Despite this amendment, however, this Court continued to adhere to the standard customarily utilized when reviewing LEO-13 OR cases, namely “[w]hen undertaking a review of the hearing committee’s decision rendered pursuant to § 42 — 28.6—11(b), this [C]ourt does not weigh the evidence or engage in factfinding.” Ricci, 692 A.2d at 682 (citing Dionne v. Jalette, 641 A.2d 744, 745 (R.I.1994)). Moreover, we specified that “[o]ur review is limited, rather, to an examination of the record to determine whether some competent evidence exists to support the committee’s findings.” Id. (citing Dionne, 641 A.2d at 745, City of East Providence v. McLaughlin, 593 A.2d 1345, 1348 (R.I.1991), Lantini v. Daniels, 104 R.I. 572, 574, 247 A.2d 298, 299 (1968), and Hooper v. Goldstein, 104 R.I. 32, 43, 241 A.2d 809, 814-15 (1968)); see also Culhane v. Denisewich, 689 A.2d 1062, 1064 (R.I.1997) (“The review by this [C]ourt of the findings of a hearing committee convened pursuant to the Law Enforcement Officers’ Bill of Rights is both limited and highly deferential.”).
Although the aforementioned standard is not incompatible with the standard under the APA, we take this opportunity to clarify that the standard of review set forth in the APA, as specified in § 42-28.6-12 of LEOBOR, is the correct standard of review in light of the 1995 amendment and we shall utilize it. Although this presents a modest change to our prior case law, we do not deem the two standards to be inconsistent or incompatible with our prior holdings.
As such, it is well settled that, when this Court reviews a judgment of the Superior Court rendered after an administrative proceeding, our review is confined to questions of law. Iselin v. Retirement Board of Employees’ Retirement System of Rhode Island, 943 A.2d 1045, 1048 (R.I. 2008) (citing Rossi v. Employees’ Retirement System of Rhode Island, 895 A.2d 106, 110 (R.I.2006)). Although this Court affords “the factual findings of an administrative agency great deference, questions of law — including statutory interpretation — are reviewed de novo.” Id. at 1049 (quoting In re Advisory Opinion to the Governor, 732 A.2d 55, 60 (R.I.1999)). Thus, “[i]f legally competent evidence exists to support that determination, we will affirm it unless one or more errors of law have so infected the validity of the proceedings as to warrant reversal.” Murphy v. Zoning Board of Review of South Kingstown, 959 A.2d 535, 540 (R.I.2008) (quoting Kent County Water Authority v. State (Department of Health), 723 A.2d 1132, 1134 (R.I.1999)). In addition, it is well settled that, as a matter of law, “[t]his Court reviews de novo whether a court has subject-matter jurisdiction over a particular controversy.” Tyre v. Swain, 946 A.2d 1189, 1197 (R.I.2008) (citing Newman v. Valleywood Associates, Inc., 874 A.2d 1286, 1288 (R.I.2005)).
*514 Analysis
Request for a Continuance
On appeal, the city contends that it was error for the hearing committee to deny the city’s request for a continuance. The city also argues that the Superior Court justice erred in affirming the hearing committee’s decision, and by refusing to review the Presiding Justice’s July 18 order. Finally, the city assigns error directly to the Presiding Justice’s order, claiming that she erred by requiring the parties to treat the hearing date as if it occurred on July 20, 2011.
As previously stated, because LEOBOR is a creature of statute, “[t]he rules of statutory construction require us to give statutory provisions their customary and ordinary meaning in the absence of legislative intent to the contrary.” In re Denisewich, 643 A.2d at 1197 (citing Lynch, 120 R.I. at 873, 391 A.2d at 120). Thus, “[i]f a statutory provision is unambiguous, there is no room for statutory construction and we must apply the statute as written.” Id. (citing Exeter-West Greenwich Regional School District v. Pontarelli, 460 A.2d 934, 936 (R.I.1983)).
The comprehensive provisions of chapter 28.6 of title 42 govern LEOBOR proceedings from inception to completion. Pursuant to § 42-28.6-5(b), a hearing — defined in § 42-28.6-1(3) as “any meeting in the course of an investigatory proceeding * * * conducted by a hearing committee for the purpose of taking or adducing testimony or receiving evidence” — must be convened within thirty days after the chairperson of the hearing committee is selected. Once this initial hearing occurs, the hearing committee must complete the proceedings within sixty days; the hearing committee then has an additional thirty days thereafter to issue a written decision. Section 42-28.6-5(b). This section also provides that “[t]he time limits established in this subsection may be extended by the presiding justice of the superior court for good cause shown.” Id.
In the case at bar, the appointment of the hearing committee chair occurred on June 23, 2011; thus, by operation of law, the parties had until July 23, 2011 to conduct the first hearing according to the thirty-day mandate in § 42-28.6-5(b). When it became apparent that there were multiple conflicts with the originally scheduled July 20 hearing date, a short continuance to July 22 was requested, which, importantly, was made within the thirty-day time limit allowed under § 42-28.6-5(b). However, when counsel for Laprade objected to the hearing date being moved, the committee chair denied the request to change the date. This refusal prompted committee member Moreau to write to the Presiding Justice, stating that “any further action to extend the time limits or reschedule the first meeting must be extended by the presiding justice.”
Notably, LEOBOR is silent on whether — or under what circumstances — a hearing committee may grant a continuance for an initial hearing that would fall within the thirty-day limit outlined in § 42-28.6-5(b). The chapter does, however, state that the thirty-day time limit for the initial hearing “may be extended by the presiding justice of the superior court for good cause shown.” Id. Furthermore, § 42-28.6-5(b) does not set forth the method by which a request to the presiding justice to extend the time limits may be made.[14] Nonetheless, LEOBOR pro *515 ceedings are not exempt from the longstanding rule that the jurisdiction of the Superior Court must first be invoked by the filing of a complaint or miscellaneous petition and may not be invoked by letter — or telephone call — to the presiding justice. See DeWitt v. Wall, 796 A.2d 470, 471 (R.I.2002) (mem.) (despite statutory scheme allowing for review, “[ljetters, motions, and other documents addressed or provided to justices of the Superior Court do not constitute complaints under the applicable rules, nor is the jurisdiction of the Superior Court invoked by letter or by communications that do not constitute a complaint under the applicable rules”). This well settled requirement is consistent with our rules of procedure, as well as the appeal process outlined in LEOBOR.[15]
Although the dissent suggests that — by adhering to our rules of procedure and the appellate procedure outlined in LEOBOR — the requisite filing of a complaint or miscellaneous petition in the Superior Court would lead to “untenable results and immeasurably complicate disciplinary matters under LEOBOR,” we cannot agree. LEOBOR proceedings are statutory proceedings that are strictly regulated; these proceedings are not ad hoc, informal avenues to police discipline. The statute unequivocally anticipates the invocation of the jurisdiction of the Superi- or Court at several stages of the proceedings. As such, the dissent’s suggestion that a filing in the Superior Court should occur only at the end of the LEOBOR proceedings — when seeking review pursuant to the APA — is without foundation and inconsistent with the plain language of the statute. Rather, our requirement that a complaint be filed prior to the Superior Court exercising its jurisdiction in a LEO-BOR proceeding will streamline the process, eliminate piecemeal appeals, and provide a clear record for appellate review.
Moreover, we are convinced that a judicial proceeding occurred in this case and that the Presiding Justice was not acting in an administrative role. We are mindful that counsel for Laprade requested a hearing before the Presiding Justice concerning an issue that was contested between the parties. The Presiding Justice graciously accommodated this request and took the bench, in open court, with a stenographer present, to hear argument. The Presiding Justice then issued an order regarding a matter in which she was asked to exercise her judicial discretion. Having *516 done so, this order was issued with the force of law. Therefore, contrary to the dissent’s belief, this was a judicial proceeding and not an administrative function.
As such, in the absence of a complaint or miscellaneous petition filed in the Superior Court, it is clear that the letter sent to the Presiding Justice by Moreau — as well as the telephone call made by Laprade’s counsel — were both inappropriate and insufficient means to properly invoke the jurisdiction of the Superior Court in this case. We therefore conclude that the Presiding Justice acted without jurisdiction.
Even if the Presiding Justice were authorized to proceed, we are of the opinion that she exceeded her authority by ordering the parties to select a different date and then requiring that they treat the initial hearing as if it occurred on July 20, 2011. The authority of the Presiding Justice in this area is clearly limited. Section 42-28.6-5(b) precisely — and unambiguously — states that “[t]he time limits established in this subsection may be extended by the presiding justice of the superior court for good cause shown.” Thus, at this juncture, the Presiding Justice may only become involved in the LEOBOR hearing process for the purpose of extending the time limits enumerated in § 45-28.6-5(b) beyond the statutory deadlines and only upon a showing of good cause.
In the case at bar, after deciding that “the [cjity’s failure to present its witness and evidence list ten days prior to the hearing does not represent good cause for an extension of the hearing date” — a standard not required for a continuance within the initial thirty-day time limit — the Presiding Justice stated that she was “sympathetic to Counsel’s family medical exigency,” and directed the parties to “agree on a mutually convenient date for [the] hearing.” In so doing, the Presiding Justice found good cause to extend the time limit beyond the thirty days set forth in § 42-28.6 — 5(b). However, by requiring that the date of the hearing “be considered as July 20, 2011 for timing purposes,” the Presiding Justice erred and exceeded her authority under the unambiguous language of § 42 — 28.6—5(b), causing the proceedings to be fatally affected by this error of law.
Although it is apparent to the Court that this error was the result of good intentions by a sympathetic jurist, we are constrained to hold that the Presiding Justice had no authority to order the parties to treat a hearing date as having taken place on a different date. This is a fiction in which we decline to engage. See In re Sabetta, 661 A.2d at 83 (“[W]hen the language of a statute is unambiguous and expresses a clear and sensible meaning, no room for statutory construction or extension exists, and we are required to give the words of the statute their plain and obvious meaning.”) (quoting Ellis v. Rhode Island Public Transit Authority, 586 A.2d 1055, 1057 (R.I.1991)).
It is undisputed that the first meeting of the hearing committee occurred on July 22, 2011, thus satisfying § 42-28.6 — 5(c) by providing the respondent with at least ten days’ notice of the evidence and witnesses against him in the LEOBOR proceeding.[16] As such, we are of the opin *517 ion that, from a very early stage in the LEOBOR proceedings, “one or more errors of law have so infected the validity of the proceedings as to warrant reversal.” Murphy, 959 A.2d at 540 (quoting Kent County Water Authority, 723 A.2d at 1134). Police disciplinary proceedings under LEOBOR are matters of great public concern, such that the parties and the public should have confidence in the result. See Lynch, 120 R.I. at 874, 391 A.2d at 121 (noting that the exception that this Court may review matters outside the record on certiorari is applicable in LEOBOR proceedings, because the exception applies in “situations involving the public interest,” and “[w]e believe that, because the police act to protect persons and property and to ensure the public safety * * * the public has an interest in the validity of the mechanism whereby allegations of improper conduct by police officers are adjudicated”). Therefore, based on the errors of law committed and our holding in this case, we deem it unnecessary to reach the other issues raised on appeal.
Conclusion
For the reasons stated in this opinion, the decision of the Superior Court is quashed and the decision of the hearing committee is vacated. This matter may be remanded to the Superior Court with further directions to remand this matter to the hearing committee to conduct LEO-BOR proceedings regarding the disciplinary charges filed against the respondent de novo and in accordance with this opinion. The rehearing may be conducted before the same hearing committee that was initially chosen to hear the charges — if the members thereof choose to reconvene — or before a hearing committee newly selected for the purpose of conducting a LEOBOR proceeding de novo. The papers in this case may be returned to the Superior Court with our decision endorsed thereon.

. Laprade was convicted of violating G.L. 1956 § 11-45-2, entitled “Indecent exposure — Disorderly conduct,” which states that "[a] person commits indecent exposure/disorderly conduct when for the purpose of sexual arousal, gratification or stimulation, such person intentionally, knowingly, or recklessly * * * [ejxposes his or her genitals to the view of another under circumstances in which his or her conduct is likely to cause affront, distress, or alarm to that person.” Section 11-45 — 2(a)(1). Notably, Laprade did not appeal this conviction.

. Specifically, Laprade was charged with one count of violating the code of ethics, five counts of conduct unbecoming of an officer, one count of criminal conduct, two counts of failing to obey orders, one count of failing to provide current contact information, one count of neglecting the duty to obey, one count of insubordination, one count of exerting undue influence upon others, one count of neglect of duty, one count of failing to maintain fitness for duty, one count of incompetence, one count of failing to meet job description, and one count of untruthfulness.

.The evidence and witness list was provided to respondent by a member of the city’s internal affairs office who, the record discloses, did not have experience with LEOBOR proceedings. In pertinent part, G.L. 1956 § 42-28.6-5 provides:
"(c) Not less than ten (10) days prior to the hearing date, the charging law enforcement agency shall provide to the law enforcement officer:
"(i) A list of all witnesses, known to the agency at that time, to be called by the agency to testify at the hearing;
"(ii) Copies of all written and/or recorded statements by such witnesses in the possession of the agency; and "(iii) A list of all documents and other items to be offered as evidence at the hearing.
[[Image here]]
"(e) Failure by either party to comply with the provisions of subsections (c) and (d) of this section shall result in the exclusion from the record of the hearing of testimony and/or evidence not timely disclosed in accordance with those subsections.” (Emphasis added.)

. Section 42-28.6-5(b) provides that a LEO-BOR hearing shall commence within thirty days of the selection of the hearing committee chair, that all proceedings shall be completed within sixty days thereafter, and that the hearing committee must issue a written decision within thirty days of the conclusion of the proceedings. Nevertheless, the time limits established in § 42-28.6 — 5(b) "may be extended by the presiding justice of the superior court for good cause shown.”

. This document — captioned "City of Pawtucket v. Officer Nich[allas Laprade " — did not bear a Superior Court filing number, and was entitled "City of Pawtucket’s petition and memorandum in support thereof for the Honorable Presiding Justice to, among other *508 things, extend the date within which hearings must commence in the above-referenced matter.”

. Laprade did not attend the September 8, 2011 hearing, or any other subsequent proceedings.

. Under the statute, a “hearing” is defined as "any meeting in the course of an investigatory proceeding, other than an interrogation at which no testimony is taken under oath, conducted by a hearing committee for the purpose of taking or adducing testimony or receiving evidence.” Section 42-28.6-1(3) (emphasis added).

.Pursuant to § 42-28.6-10, "[t]he hearing committee conducting the hearing may take notice of judicially cognizable facts and, in addition, may take notice of general, technical, or scientific facts within its specialized knowledge.”

. Because the timeline given to the parties to provide additional briefing on the issues raised at the hearing brought the proceeding outside of the sixty days allowed to complete LEOBOR proceedings under § 42-28.6 — 5(b), the committee petitioned for — and was granted — an extension of time by the Presiding Justice.

. Under § 42-28.6-12(a) of LEOBOR, "[alp-peals from all decisions rendered by the hearing committee shall be to the superior court in accordance with [G.L.1956] §§ 42-35-15 and 42-35-15.1."

. At the time Kurbiec v. Bastien, 120 R.I. 111, 113, 385 A.2d 667, 668 (1978) was decided, this Court based its holding on article 12, section 1, of the amendments to the Rhode Island Constitution.

. In such an instance, this Court, if it saw fit, would issue the writ of certiorari directly to the hearing committee so that the record of the proceedings could be certified to the Supreme Court.

. The appeal process contained in G.L.1956 § 45-20-1.1 may still be utilized in certain circumstances. Section 45-20-1.1 currently provides, in pertinent part:
"(a) Any police officer * * * aggrieved by any decision of the bureau of police and fire, or any similar department, board, or bureau of a city or town having control of the police department, or any other duly constituted authority within the police department of the city or town, which decision orders the dismissal, reduction in rank, suspension, fine, performance of extra hours of duty, loss of seniority rights, transfer with or without a reduction in pay, or reprimand, and the decision is based on charges involving moral turpitude or violation of departmental regulations, may appeal the decision to the superior court * * * provided, that no appeal is allowed unless *513 all administrative remedies available under the municipal chatter have been exhausted * * * Upon appeal, the police officer * * * [is] entitled to a trial de novo before a justice of the superior court without a jury.”
Notably, this method of appellate review is not "exclusive of any other remedy or procedure otherwise available.” Section 45-20-3.

. We note that the preceding section, § 42-28.6-4, similarly allows for the extension of various initial time limits; however, it specifies that this be done "upon petition” to the presiding justice. Section 42-28.6-4(c), (d), (e), (f). Although we read this language to *515 require the filing of a petition in Superior Court, we are also cognizant that other provisions exist within LEOBOR that provide for judicial review without specifying that a complaint must first be filed. See, e.g., § 42-28.6-1 (2) (allowing presiding justice to take action "[u]pon written application" of a committee member, and upon "motion” of a party). We declare, however, that such provisions within LEOBOR are not excluded from our holding in this case that first requires the filing of a complaint or a miscellaneous petition in the Superior Court to properly invoke its jurisdiction.

. In the July 18 order, the Presiding Justice noted that "[a]ny evidentiary issues may properly come before the Court on appeal from either party under § 42-28.6-12.” This authority, however, is circumscribed. Section 42-28.6 — 12(a) of LEOBOR clearly states that "[alppeals from all decisions rendered by the hearing committee shall be to the superior court in accordance with §§ 42-35-15 and 42-35-15.1” Section 42-35-15(a) allows that, under certain circumstances, an initial ruling of a hearing committee may be subject to immediate review because ”[a]ny preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency order would not provide an adequate remedy." (Emphasis added.) To do so, however, § 42-35-15(b) clearly dictates that to properly invoke the jurisdiction of the Superior Court, all such "[proceedings for review are instituted by filing a complaint in the superior court * * *.” (Emphasis added.)

. We note that, after careful review of the record, we are not convinced that the July 22, 2011 proceeding actually constituted a hearing under LEOBOR, based on the hearing committee’s refusal to take any evidence despite the persistent attempts — and over the strenuous objection — of Laprade’s counsel. Notably, a "hearing” is defined in § 42-28.6-1(3) as "any meeting in the course of an investigatory proceeding * * * conducted by a hearing committee for the purpose of taking or adducing testimony or receiving evidence." (Emphasis added.) However, because we vacate the hearing committee’s decision and *517 direct that this case be heard de novo by the hearing committee, we need not address this troubling issue.